STATE OF NEBRASKA, APPELLEE, V. LARRY NUSS, APPELLANT.

454 N.W.2d 482

Filed April 20, 1990. No. 89-335.

Robert M. Harris and Randall L. Lippstreu, of Harris & Lippstreu, for appellant.

Robert M. Spire, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and RONIN, D.J., Retired.

GRANT, J.

The defendant, Larry Nuss, appeals his convictions for violation of Neb. Rev. Stat. § 28-517 (Reissue 1989). The defendant was charged in two separate counts that he did "receive, retain or dispose of" stolen property on April 7 and on April 13, 1988. A jury found the defendant guilty and assessed the value of the property received or retained on April 7 at $319.92 and the value of the property received or retained on April 13 at $1,332.24. Theft is a Class IV felony when the value of the thing involved is $300 or more, but does not exceed $1,000, and is a Class III felony when the value of the thing involved exceeds $1,000. Neb. Rev. Stat. § 28-518 (Reissue 1989). Defendant was sentenced to imprisonment for a period of 20 months to 5 years on each count, with the sentences to run concurrently. Defendant timely appealed.

The defendant assigns as error the actions of the trial court in not finding that the informations were barred by the statute of limitations and in five other particulars concerning rulings on evidence by the court, instructions given by the court, and the court's failure to direct a verdict in defendant's favor. We reverse and remand the cause for dismissal based on defendant's first assignment of error, and need not discuss the

others.

The record shows the following. Defendant was employed by Burlington Northern Railroad (BN) from January to November 1977, from April to November 1978, and continuously from April 1979 until his resignation from BN on January 15, 1984. During the last 5 years of his employment, defendant worked as a pipefitter and sheet metal worker in BN's mechanical department in Alliance, Nebraska. After resigning, defendant moved to Phoenix, Arizona, where he lived until returning to Nebraska in 1987.

On April 6, 1988, the Morrill County sheriff was asked by defendant's wife, Reta, to come to the Nuss home in Bayard. Reta Nuss was in the process of leaving the defendant and requested the sheriff to be present while she removed her possessions from the house in Bayard and exchanged property with the defendant on a farm located outside of Bayard. The farm was owned by defendant's mother, Lena Nuss. Later that day, the sheriff telephoned a special agent of BN and advised him that while at defendant's house earlier that day, the sheriff had observed property with the initials "BN" engraved or marked on the property.

On April 7, 1988, the sheriff served the defendant at the farm with a warrant to search both defendant's residence in Bayard and the farmhouse located outside of town. The search resulted in the seizure of numerous handtools with BN markings and many other miscellaneous items. The inventory sheet prepared on the seizure consisted of seven pages of items, later identified as BN property, including hammers, safety glasses, flashlight batteries, wrenches, sockets, switch locks, pick handles, ax handles, first aid kits, etc. Following further investigation, a second warrant was obtained, and on April 13, 1988, another search was conducted at the farm. This search resulted in the seizure of more property, later identified as BN property, including at least 16 hammers, 10 first aid kits, numerous wrenches and sockets, two switch locks, a box of batteries, a box of pipefittings, a toolbox, space heaters, a shovel, and other railroad materials.

At trial, a BN employee in charge of materials testified that all BN property has stock code numbers identifying the

property to a particular vendor or to a group of items. The items without the BN markings were identified as BN property through a logo or by a shade of green paint unique to BN property. Testimony was also presented on BN's procedures for disposing of scrap material. A BN agent testified that BN employees are not allowed to carry materials belonging to the railroad out of the mechanical department. On occasion, an employee may purchase scrap material, but before such a purchase is allowed, the employee must get authorization for the purchase. However, no handtool with a useful life is disposed of in this manner.

Section 28-517 of the Nebraska Criminal Code, which is based on the Model Penal Code § 223.6 (1962), provides: "A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner." The evidence does not support any determination that the defendant received property on a date or dates certain, nor that the defendant ever disposed of any property. The only basis for defendant's conviction in this case is that he "retained" the property on the days it was found by the sheriff.

Confusion arises because it is unclear as to whether the statute, in its present form, creates a separate offense of "retaining stolen property." The former statutory provisions dealing with the subject of receiving stolen property prohibited an individual from "receiving" and "concealing" such property, but did not prohibit one from "retaining" stolen property. See Neb. Rev. Stat. §§ 28-508 and 28-513 (Reissue 1975). Now there is but one offense of "theft by receiving," which includes the former crime of receiving stolen property. See Neb. Rev. Stat. § 28-510 (Reissue 1989). Unlike the words "receiving" and "disposing," the word "retaining" is not defined in Nebraska's Criminal Code. See Neb. Rev. Stat. § 28-509 (Reissue 1989). Since neither the statute nor legislative history on the enactment of § 28-517 refers to an intent to create a separate, additional crime of "theft by retaining," we do not now so hold.

Yet, the word "retaining" is not without meaning. As noted

in the comments to the Model Penal Code: "By defining 'receiving' to include the retention of possession, the Model Code also makes it possible to convict a person who receives without knowledge that the goods were stolen but who, upon learning of their status, nevertheless resolves to keep or sell them." Model Penal Code § 223.6, comment 2 at 235 (1980).

As the comment to the Model Penal Code suggests, the "retaining" language was inserted to ease the burden of proving intent in a situation where an accused does not form criminal intent until sometime after he receives the property. The element of intent the State is attempting to prove in this case is not the traditional element of whether defendant received property with knowledge that it was stolen, but, instead, whether he retained it with guilty knowledge, no matter how the defendant obtained possession of stolen property. In this case, there is no evidence as to the stealing of the property, nor as to any actual receiving of the property. This prosecution is based on defendant's retention of stolen property.

The retaining aspect of "theft by receiving" is also important in establishing venue. That is, since "[a]ll criminal cases shall be tried in the county where the offense was committed," and the crime of retaining can be committed at some place other than where the property was actually received, venue can be established where the retaining aspect of the crime was committed. See Neb. Rev. Stat. § 29-1301 (Reissue 1989). With this in mind, venue is proper in Morrill County, as the place where defendant would have committed the crime with the required intent, even though the defendant alleges the actual receiving of the property had to have occurred in Box Butte County, where BN's mechanical department is located.

We first determine that the defense of the statute of limitations in a criminal case is raised by a defendant's not guilty plea. *Jacox v. State,* 154 Neb. 416, 48 N.W.2d 390 (1951); *Emery v. State,* 138 Neb. 776, 295 N.W. 417 (1940). The defendant pled not guilty in this case and, in addition, specifically raised the statute of limitations defense before the trial court and this court. This issue is before us.

In his dispositive assignment of error, defendant contends that the 3-year statute of limitations prescribed by Neb. Rev.

Stat. § 29-110 (Reissue 1985) bars prosecution of the offenses. Specifically, the defendant contends that even if the property at issue were stolen, "[t]he statute of limitations commenses [sic] to run in a criminal charge of retaining stolen movable property from the time the defendant first retained the movable property with the necessary intent." (Emphasis omitted.) Brief for appellant at 25. The complaints filed April 18 and 26, 1988, allege the offenses occurred on April 7 and 13, 1988, on the days the property was discovered, allegedly in defendant's possession. Defendant alleges that if the dates of the offenses are before April 18, 1985, the offenses are barred by the statute, thus implying that the offenses alleged had to have occurred before January 15, 1984, which was the date of defendant's resignation from BN. The State, on the other hand, contends that the statute of limitations does not bar prosecution because the offenses with which the defendant was charged are continuing offenses, and the statute does not begin to run until the prohibited conduct terminates, that is, when the State discovers the unlawful retention.

We examined the subject of continuing offenses in *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989). In *Schaaf*, we set out the definition of continuing offense as

> "a 'continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy; an offense which continues day by day; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.' "

*Id.* at 152, 449 N.W.2d at 768; See, also, *State v. Copple*, 218 Neb. 837, 359 N.W.2d 782 (1984); *State v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982).

Jurisdictions which have held that theft by receiving is a continuing offense have also adopted variations of the Model Penal Code's determination on how theft offenses should be graded. See, e.g., *State v. Temple*, 65 Haw. 261, 650 P.2d 1358 (1982). The model code provides:

> The amount involved in a theft shall be deemed to be the highest value, by any reasonable standard, of the property

or services which the actor stole or attempted to steal. Amounts involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense.

Model Penal Code § 223.1 at 126 (1962). Arguably, such language could be interpreted as indicating thefts are continuing offenses. However, Nebraska has not adopted such a statute.

Those jurisdictions which have found the aspect of retaining stolen property to be a separate and continuing offense have clear legislative mandates regarding when the statute of limitations begins to run for continuing offenses. See, e.g., *Temple, supra.* The Hawaii statute expressly provides: "An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." Haw. Rev. Stat. § 701-108(4) (1985).

In Nebraska, there is no clear legislative intent showing that the Legislature intended to make theft by receiving a continuing course of conduct. Although the Nebraska Legislature adopted the Model Penal Code version of "theft by receiving," the Legislature has not enacted the model code's aggregation system, nor has the Legislature enacted a provision concerning when the statute of limitations commences for continuing offenses.

We have stated that a conclusion that a crime is a continuing offense " 'should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the Legislature] intended that it be treated as a continuing one.' " *Schaaf, supra* at 152, 449 N.W.2d at 768. There we held that theft by disposition under Neb. Rev. Stat. § 28-511(2) (Reissue 1985) was not a continuing offense.

In considering the question of continuing offenses, the U.S. Supreme Court refused to construe the draft registration statute as a continuing offense, stating:

In deciding when the statute of limitations begins to run

in a given case several considerations guide our decision. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose,' *United States v. Scharton*, 285 U. S. 518, 522 [52 S. Ct. 416, 76 L. Ed. 917] (1932)." *United States v. Habig*, 390 U. S. 222, 227 [88 S. Ct. 926, 19 L. Ed. 2d 1055] (1968). . . . These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.

*Toussie v. United States*, 397 U.S. 112, 114-15, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970).

The question of continuing offense was earlier considered by the U.S. Supreme Court in *United States v. Irvine*, 98 U.S. 450, 25 L. Ed. 193 (1878). In the *Irvine* case, defendant Irvine wrongfully withheld pension benefits from a Mrs. Berkely. Berkely demanded the pension on December 24, 1870. An indictment was returned against Irvine on September 15, 1875. Defendant pled the statute of limitations of 2 years, but the prosecutor's position was, "You received the money. You have continued to withhold it these twenty years; every year, every month, every day, was a withholding, within the meaning of the statute." 98 U.S. at 452. The Court's opinion states: "We do not so construe the act. Whenever the act or series of acts necessary

to constitute a criminal withholding of the money have transpired, the crime is complete, and from that day the Statute of Limitations begins to run against the prosecution." 98 U.S. at 452. The Court held that the withholding of the pension was not a continuing offense and that the statute of limitations was a defense.

In *United States v. Mendoza*, 122 F. Supp. 367 (N.D. Cal. 1954), the defendant was charged with retaining property which he knew was stolen from the United States. The court stated: "There is no evidence in the record showing that the retention of any of the property began in the period between May 5, 1951, and May 5, 1954, the latter date being the date that the indictment was filed." *Id*. at 367. The court cited *Irvine, supra*, and held:

> In the instant case criminal intent is an element of the crime, and therefore the statute of limitations should commence to run from the time that defendant first retained the property with the necessary intent.
>
> In a case cited by plaintiff, *U.S. v. Irvine*, 1878, 98 U.S. 450, 25 L.Ed. 193, the court in essence states that whenever the act or acts necessary to constitute a criminal withholding of the property have transpired, the crime is complete, and from that day the statute of limitations begins to run against the prosecution. This case has been the cornerstone for similar bankruptcy cases interpreting the word "conceal" as not to be a continuing offense. *Warren v. United States*, 5 Cir., 199 F. 753, 43 L.R.A.,N.S., 278; *United States v. Trotter*, D.C., 8 F.Supp. 275. Concealment of assets in bankruptcy, however, is now made a continuing offense by Title 18, U.S.C. § 3284. No such enactment makes retaining property a continuing offense, nor is there any case that so interprets it.

*Mendoza, supra* at 368.

In *State v. Webb*, 311 So. 2d 190, 191 (Fla. App. 1975), the court considered the application of the 2-year Florida statute of limitations to the violations of a statute providing, in part, "whoever buys, receives, or aids in the concealment of stolen money, goods, or property, knowing the same to have been

stolen, shall be guilty of a felony." The facts showed that on May 12, 1970, defendant Webb had stolen radio property, which he knew was stolen, installed on the premises of a radio station he operated. The information filed alleged that Webb committed the crime on July 20, 1973, which was the date of his arrest. The court stated:

> We hold that the crime of receiving and concealing stolen property is not a continuing offense and that the statute of limitations begins to run when the crime is complete, to wit: when the property is received and concealed with the knowledge that the same is stolen.

> Our Supreme Court in State v. King, Fla.1973, 282 So.2d 162, quoted with approval from 21 Am.Jur.2d, Criminal Law, § 157, where it is stated:

> " 'The statute of limitations begins to run from the time of commission of an offense, or when the crime is complete, *not the date the crime is discovered.*' [Emphasis supplied.]"

*Webb, supra* at 191. The court held that the Florida statute was silent as to the concept of a continuing offense and that that concept should not be applied in determining whether the prosecution of Webb's crime was barred by the statute of limitations. The court affirmed the dismissal of the case against Webb.

In *Duncan v. State*, 282 Md. 385, 391, 384 A.2d 456, 460 (1978), the court also followed *United States v. Irvine, supra*, and stated: "It was established a century ago that the criminal withholding of money or property was not a continuing offense." With regard to the specific case before it, the court held: "Duncan's act in receiving the coat with knowledge that it had been unlawfully obtained by Mally completed the offense. From that date limitations began to run against the prosecution for the offense." *Duncan, supra* at 394, 384 A.2d at 462.

In *People v. Kimbro*, 182 Ill. App. 3d 572, 538 N.E.2d 826 (1989), the court considered a case in which the record showed that in the fall of 1975 a certain tractor was stolen. Defendant's ex-wife testified that in the fall of 1975, defendant drove a tractor to their house and later told his ex-wife he had stolen the tractor. In 1986, when defendant was going through a divorce

with his wife, defendant asked a friend to store the tractor for him because he did not want his wife to get that property. The tractor was kept at the friend's farm until it was discovered on March 11, 1988, by a sheriff's department investigator. Defendant was charged with theft, in that he exerted unauthorized control over the tractor with intent to deprive the owner of its use. The court held that the statute of limitations began to run upon the original taking of the property in 1975 and that defendant did not commit a separate offense on March 11, 1988, when the defendant continued exerting unauthorized control over the tractor. See, also, *State v. Hersch*, 445 N.W.2d 626 (N.D. 1989); *State v. Ladely*, 82 Wash. 2d 172, 509 P.2d 658 (1973).

The Nebraska Legislature has not made the offense of "theft by receiving" a continuing offense, and absent legislative intent to do so, we do not now so hold.

The basic proposition that controls this case is that "[t]he burden is on the State to prove all of the essential elements of the crime charged, including the fact it was committed within the time fixed by law." *Jacox v. State*, 154 Neb. 416, 419, 48 N.W.2d 390, 392 (1951). The statute of limitations should be liberally construed in favor of the defendant in a criminal case. *Jacox, supra*. In the usual criminal case, this fact is established by the proof of the crime itself, that is, that the crime was committed at a time certain and that defense counsel and the court knew that that time is within the applicable statute of limitations. In this case, however, the crimes charged are "retaining" stolen goods.

As stated above, the crimes charged are not, under Nebraska law, continuing offenses. The State has not satisfied its burden as to when the crimes charged occurred. While defendant retained property that the jury could well find was stolen and that defendant knew was stolen, the State did not prove when those crimes occurred, and thus the State failed to prove all the elements of the crimes charged against defendant.

The judgment is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.