**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Gene V. LODERMEIER, Defendant and Appellant.**

**No. 17482.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 2, 1991.

Decided Feb. 26, 1992.

Mark Barnett, Atty. Gen., Diane Best, Asst. Atty. Gen., Pierre, James L. Iosty,

Minnehaha County Deputy State's Attorney, for plaintiff and appellee.

Lee A. Tappe, P.C., Platte, for defendant and appellant.

WUEST, Justice.

Appellant (Lodermeier) was indicted on four counts of grand theft by receiving, retaining, or disposing of stolen property and four counts of possessing personal property with the serial numbers removed. A part two information was also filed, charging Lodermeier with being an habitual offender. All four cases were joined into one trial. Lodermeier was convicted on six of the eight indicted charges. He then admitted his prior conviction and was adjudicated an habitual offender. Lodermeier was sentenced to forty-five years in prison. His motions for a new trial were denied. Lodermeier appeals his conviction. We affirm.

Lodermeier's convictions involve three articles of property, a Clark Model 642 Bobcat skid-steer loader (large Bobcat), a Model 116 John Deere garden tractor, and a Model M371 Melroe Bobcat (small Bobcat). Each is separately addressed.

### 1. *Large Bobcat.*

Steel Structures, a company in Aberdeen, South Dakota, owned a Clark Model 642 Bobcat. On the morning of July 2, 1984, employees discovered this large Bobcat missing from a construction site in Brookings. The loss was reported to police.

Plainly visible on the Bobcat were large black decals that said "Clark" and included the model number of the equipment, 642. Also, the Bobcat had a conspicuous serial number plate riveted to the back "fin" of the vehicle. The same serial number was stamped in the transmission housing frame of the machine. The Bobcat could also be identified by a unique serial number on its engine. Additionally, the Bobcat had hydrostatic transmission pumps on its sides. Serial numbers were also riveted on these pumps.

On November 29, 1987, this Bobcat was discovered by law enforcement officers in an alley behind Lodermeier's garage in Sioux Falls, South Dakota. The Bobcat's external serial number plate was missing. There also appeared to be scraping or scratch marks across the area where the plate had been. Portions of the rivets were protruding from the rivet holes. In addition, the model number decals had been removed or altered.

Sergeant Folkerts, Detective Prince and other officers served a search warrant, and recovered the Bobcat the next day. The Bobcat still had its hidden serial number, the same engine serial number, and the same numbers on its hydrostatic transmission pumps as it did when it had been manufactured. Lodermeier was charged with violating SDCL 22–30A–7 (1988) (receiving, retaining or disposing of stolen property) and SDCL 22–11–27 (1988) (possession of personal property with an altered or removed serial number).

The president of Steel Structures testified he did not give Lodermeier permission to use the Bobcat, nor to his knowledge had anyone else. In fact, the company had a policy against loaning equipment to others. Likewise, to his knowledge, no one had given Lodermeier permission to remove the serial numbers.

### 2. *Lawn Tractor.*

On July 6, 1984, Nelson Implement of Elk Point, South Dakota reported to law enforcement authorities that a Model 116 John Deere lawn tractor had been stolen from its lot. It could be identified by its unique serial number. The serial number was displayed on a metallic-looking serial number plate which was mounted with strong adhesive on the exterior of the tractor. The lawn tractor's engine also had a unique serial number. In addition, the lawn tractor had a unique number attached to the transaxle housing. This transaxle number was assigned to the specific Model 116 tractor owned by Nelson Implement.

On November 10, 1987, the lawn tractor was recovered from Lodermeier's driveway. The external conspicuous serial number had been scraped off the tractor. Its engine number was still in place as was the unique transaxle number. Based on the transaxle number, law enforcement officers determined the lawn tractor was the

**618** ◼ ▬▬▬▬▬▬▬▬

one which had been stolen from Nelson Implement.

Lodermeier was charged with violations of SDCL 22–30A–7 (receiving, retaining or disposing of stolen property) and SDCL 22–11–27 (possession of personal property with an altered or removed serial number). Mr. Nelson testified he had never authorized Lodermeier to use or possess this lawn tractor in any fashion or to remove or alter its serial numbers.

### 3. *Small Bobcat.*

Mark's Machinery of Yankton, South Dakota owned a 1976 Model M371 Melroe Bobcat which also had a unique serial number. The Bobcat was discovered missing on the morning of November 29, 1977. Its serial number was displayed on a metallic serial number plate that was attached by the manufacturer with four rivets to the left rear frame of the equipment. It also had an identical hidden serial number. The Bobcat's engine also had a unique number used for determining ownership. The engine's serial number was attached on a plate riveted to the engine.

The small Bobcat was discovered by patrol officers on the street in front of Lodermeier's residence on March 25, 1988. Officers discovered the Bobcat's conspicuous, externally mounted serial number plate had been removed and rivet holes or damaged rivets remained. The engine's number plate had also been removed. The hidden engraved serial number was still in place.

Lodermeier was charged with violations of SDCL 22–30A–7 (receiving, retaining or disposing of stolen property) and SDCL 22–11–27 (possession of property with an altered or removed serial number). Mark Hunhoff, the owner and operator of Mark's Machinery, testified he had not given Lodermeier permission either to take the Bobcat or to remove its serial numbers. Nor, to his knowledge, had anyone else.

Lodermeier was convicted of three counts of receiving, retaining or disposing of stolen property in violation of SDCL 22–30A–7 and three counts of possession of property with an altered or removed serial

number in violation of SDCL 22–11–27. He appeals [1] raising six issues:

(1) Whether the three indictments charging possession of stolen property with the serial numbers removed were defective because they failed to allege the removal was done "without the consent of the owner."

(2) Whether the crimes of retaining the stolen small Bobcat and possessing the small Bobcat with its serial numbers removed were continuous in nature and therefore not barred by the statute of limitations.

(3) Whether the trial court erred in refusing to suppress the stolen items as evidence obtained in violation of Lodermeier's fourth amendment rights.

(4) Whether the trial court improperly admitted evidence of Lodermeier's previous felony conviction of transporting stolen property.

(5) Whether the trial court erred in refusing to instruct the jury that it must find someone other than Lodermeier had stolen the property before it could find him guilty of receiving or possessing stolen property.

(6) Whether the trial court improperly denied Lodermeier's motion for a new trial based upon the State's failure to disclose the name of a confidential informant and based upon newly discovered evidence.

We will discuss each issue seriatim and will develop further facts pertinent to each issue.

### I.

Lodermeier was charged with three counts of knowingly possessing property from which a serial number had been removed, in violation of SDCL 22–11–27 which provides:

Any person who, *without consent of the owner,* intentionally alters, obliterates or removes a serial number or other identifying mark on personal property, or knowingly possesses any personal property having a serial number or identify-

---

1. Lodermeier is represented by different counsel on appeal.

ing mark which has been intentionally obliterated, altered, or removed, which number or marking may be used to determine ownership thereof, is guilty of a Class 6 felony.

(Emphasis added). The indictments with which Lodermeier was charged failed to allege the serial numbers had been removed without the owner's consent.

"[A]n indictment which does not contain all the essential elements of the offense charged is defective...." *State v. Stone,* 467 N.W.2d 905, 907 (S.D.1991). However, we have held failure to set out an essential element of an offense in the charging instrument is not always fatal. *State v. Swallow,* 350 N.W.2d 606, 609 (S.D.1984). "'[T]he defect is cured if the information sets forth the proper statute, the jury instructions set forth all the essential elements of the offense, and the State proves all the essential elements at trial.'" *Stone,* 467 N.W.2d at 907 (quoting *Swallow,* 350 N.W.2d at 609). *Accord State v. Williams,* 297 N.W.2d 491, 493 (S.D.1980); *State v. Larson,* 294 N.W.2d 801, 802 (S.D. 1980).

■ The indictment set forth the applicable statute. That Lodermeier was adequately informed of the charges against him was aptly demonstrated by his pretrial motion to dismiss the indictment for failing to set out all the essential elements, which motion was denied. In addition, the State presented testimony of the property owners to the effect that they had not given permission to anyone to remove the serial numbers. We believe sufficient evidence was presented on the consent issue for the jury to find the property owners had not given their consent.

■ The crux of this issue then is whether the jury instructions adequately apprised the jury of the consent element, thereby fully curing the defective indictment. The insufficiency of the indictment was brought to the trial court's attention. When the judge set out the charging language of the indictments he quoted them verbatim. However, in his general instructions, he specifically instructed the jury that before the defendant could be found

guilty on any of the three counts charged under the provisions of SDCL 22-11-27, the State must prove the prohibited acts were done "without the consent of the owner." Both attorneys, in their closing arguments, informed the jury lack of consent was an element the State was required to prove. Finally, there is no indication that the jury was confused regarding the consent issue. No interrogatories were sent by it to the judge about the issue.

"We review the jury instructions by construing them together and the instructions are not erroneous if when so construed they provide a full and correct statement of the law applicable to the case at bar." *Frazier v. Norton,* 334 N.W.2d 865, 870 (S.D.1983). *Accord State v. Grey Owl,* 295 N.W.2d 748, 751 (S.D.1980). "[T]hey are not erroneous because the particular [instruction] taken alone may not have embodied all the law applicable." *Dwyer v. Christensen,* 77 S.D. 381, 390, 92 N.W.2d 199, 204 (1958). We find the jury instructions as a whole correctly stated the law, and therefore, the defective indictment was cured. We affirm on this issue.

## II.

Lodermeier next contends the prosecutions for possession of the stolen small Bobcat and for possession of the small Bobcat with removed serial numbers were barred by the applicable statute of limitations. The small Bobcat was discovered missing on November 29, 1977. It was recovered at Lodermeier's residence on March 25, 1988, nearly eleven years after it was stolen.

SDCL 23A-42-2 (1988) provides prosecutions for crimes (other than "major crimes") must be commenced within seven years after the commission of the offense, except as provided in SDCL 23A-42-3. SDCL 23A-42-3 (1988) provides when the charge is theft, prosecution must be commenced within seven years after the discovery of the crime. A person who retains property of another knowing it is stolen is guilty of theft. SDCL 22-30A-7.

Statutes of limitation begin to run when the crime is "complete." *Pendergast v. United States*, 317 U.S. 412, 418, 63 S.Ct. 268, 271, 87 L.Ed. 368 (1943). Lodermeier argues the crimes were complete when the Bobcat was initially stolen. The State argues retention of stolen property and possession of property with serial numbers removed constitute continuous offenses and therefore are not complete until possession ends, in this case, when police recovered the small Bobcat.

In deciding this issue, we must keep in mind a crime is not continuing in nature unless it is clearly so indicated by the legislature. *Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 860, 25 L.Ed.2d 156, 161 (1970).

A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.

22 C.J.S. *Criminal Law* § 3(b), at 4 (1989) (footnotes omitted). *Accord State v. Nuss*, 235 Neb. 107, 454 N.W.2d 482, 485 (1990).

Courts have split regarding the issue of whether possession or concealment of property knowing it is stolen constitutes a continuing offense. In *State v. Lawrence*, 312 N.W.2d 251 (Minn.1981) the Minnesota Supreme Court held the crimes of possession and concealing stolen goods are continuing offenses. *Id.* at 253 (citing *Eichelberger v. United States*, 252 F.2d 184 (9th Cir.1958); *United States v. Fleetwood*, 489 F.Supp. 129 (D.Or.1980)). That court noted its theft statute already included the offense of receiving stolen property. Since receiving includes the act of taking something into one's possession, a single act, the court

concluded addition of the crime of possession of stolen property indicated a legislative intent that "possess" be used in its passive sense, to describe a continuing status. *Id.* The court also stated one possessing or concealing property he knows to be stolen has a continuing duty to return the property to its rightful owner. *Id. Accord Williams v. Superior Court of Los Angeles Cty.*, 81 Cal.App.3d 330, 344, 146 Cal.Rptr. 311, 319 (1978) (concealing stolen property). The *Lawrence* holding was reaffirmed in *State v. Fernow*, 354 N.W.2d 438, 439 (Minn.1984). *See also Com. v. Farrar*, 271 Pa.Super. 434, 413 A.2d 1094, 1098 (1980) (retaining stolen property is a continuing offense unlike receiving stolen property); *State v. Reeves*, 264 Ark. 622, 574 S.W.2d 647, 649, *cert. denied*, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1069 (1979). Other courts have held where a defendant acts purposefully to withhold the property "or [makes] it more difficult for the owner to discover it," the offense is a continuous crime. *Commonwealth v. Ciesla*, 380 Mass. 346, 403 N.E.2d 381, 383 (1980) ("[c]ontinuing, purposeful acts in aid of the concealment of stolen property transgress the basic legislative purpose to prevent the continued withholding or possession of the stolen property from its rightful owner"); *Williams v. Superior Court*, 81 Cal. App.3d at 343–44, 146 Cal.Rptr. at 318–19; *State v. Knutson*, 81 Or.App. 353, 725 P.2d 407, 409 (1986), *reaffirmed in, State v. Bailey*, 94 Or.App. 767, 767 P.2d 114, 115 (1989).

▆▆▆ We find the reasoning of this line of cases persuasive.[2] Like the statutes involved in those cases, our theft statute incorporates the crimes of receiving and retaining stolen property. SDCL 22–30A–7. Retain is defined in Black's Law Dictionary: "To continue to hold, have, use, recognize, etc., and to keep." H. Black, *Black's Law Dictionary*, 1183 (5th Edition

---

**2.** Cases holding possession of stolen property is not a continuing offense include: *United States v. Mendoza*, 122 F.Supp. 367 (N.D.Cal.1954) (retaining stolen property); *Nuss*, 454 N.W.2d at 485–87 ("theft by receiving" interpreted to include retaining); *State v. Hersch*, 445 N.W.2d 626, 631 (N.D.1989) (intentionally withholding another's property); *People v. Kimbro*, 182 Ill. App.3d 572, 131 Ill.Dec. 451, 538 N.E.2d 826 (1989) (following *People v. Steinmann*, 57 Ill. App.3d 887, 15 Ill.Dec. 411, 416, 373 N.E.2d 757, 762 (1978)) (retaining property known to be stolen); *State v. Webb*, 311 So.2d 190, 191 (Fla. App.1975).

1979). Use of the word "retains" by the Legislature indicates a clear intent to make this aspect of the crime of theft continuing in nature.[3] *Reeves,* 574 S.W.2d at 649.

A substantially similar analysis applies for possession of property with a removed serial number. The crime as defined is similar to crimes denoted in other states as concealing stolen property. The same issue is presented; that is, whether the crime is of a continuous nature. Based on the rationale set out above and on the cases dealing with concealment of stolen property, *Knutson, Lawrence, Ciesla,* and *Williams v. Superior Court, supra,* we conclude that it is.

Since both crimes are continuing offenses, the statute of limitations does not begin to run until the offense ends, *Ciesla,* 403 N.E.2d at 383; *Reeves,* 574 S.W.2d at 650; that is, when possession or retention ends. In this case, that did not occur until the stolen property was recovered by police. Thus, prosecution was commenced well within the statute of limitations.

### III.

In his third argument, Lodermeier contends evidence obtained by police should have been suppressed by the trial court. We first note the applicable standard of review. Concerning the ultimate decision to suppress the evidence, we stated:

> For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. Once again, an abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.

*State v. Pfaff,* 456 N.W.2d 558, 560–61 (S.D.1990) (quoting *State v. Bartlett,* 411 N.W.2d 411, 414 (S.D.1987)). "Under the abuse of discretion standard, we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision." *Id.* (citing *Peterson v. Peterson,* 434 N.W.2d 732 (S.D.1989)). *Accord State v. Baysinger,* 470 N.W.2d 840, 843 (S.D.1991) (probable cause to arrest). We will discuss the three items of evidence individually.

#### A. *The Large Bobcat:*

After receiving a tip, law enforcement officers discovered the large Bobcat in an alley behind Lodermeier's garage. The trailer was connected to a pickup belonging to Lodermeier. Its external conspicuous serial number was clearly missing. Portions of rivets were protruding from the rivet holes and scratch marks showed where the serial number plate had been. Sergeant Folkerts, who observed the Bobcat later that same evening noted the large model number had also been removed.

Folkerts contacted the Melroe/Bobcat Company and ascertained that four thefts of this model Bobcat had been reported in this region. One of those thefts occurred in Brookings, where Lodermeier had property. The company also informed Folkerts the Bobcat should have a serial number plate in the location where the protruding rivets were located. Based on this information, Folkerts applied for and was granted a search warrant. Officers then seized the Bobcat.

Lodermeier moved to suppress this evidence. Because reliability of the confidential informant could not be established, the trial judge redacted that portion of the affidavit and examined whether probable cause existed without the informant's tip. He concluded Folkert's observation of the removed serial number was sufficient to establish probable cause that the large Bobcat constituted evidence of a violation of SDCL 22–11–27 (possession of property with an altered or removed serial number).

Lodermeier argues the affidavit was not sufficient to establish probable cause for a search warrant because it failed to allege Lodermeier possessed property with knowl-

---

**3.** In addition, were we to conclude retention of stolen property was not a continuous offense, retention of stolen property would become the same crime as receiving stolen property, since receiving stolen property necessarily includes a brief period of retention. Such a construction would violate a fundamental rule of statutory construction: "[I]f possible, effect must be given to all provisions within the statute...." *State v. Heisinger,* 252 N.W.2d 899, 903 (S.D.1977).

edge the serial number was missing and was removed without the owner's consent. Lodermeier relies on a Texas case, *Dill v. State*, 697 S.W.2d 702 (Tex.App.1985). *Dill* held police had no probable cause *to arrest* Dill for tampering with identification numbers merely because he possessed a television set with removed serial numbers. The court reasoned possessing such property is not a "per se violation." *Id.* at 706–707.

■ Establishing probable cause to arrest is not a prerequisite to establishing probable cause for a search warrant. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556–60, 98 S.Ct. 1970, 1976–78, 56 L.Ed.2d 525, 535–38 (1978); *State v. Sundberg*, 235 Mont. 115, 765 P.2d 736, 739 (1988).

> [P]robable cause to search is not the same as probable cause to arrest. Probable cause to arrest exists where the facts and circumstances within the officer's knowledge or of which he has reasonably trustworthy information would warrant a man of ordinary caution in the belief that the arrestee has committed or is committing a crime. But the right to search is not dependent upon the right to arrest. Probable cause to search exists if the man of ordinary caution would be justified in believing that what is sought will be found in the place to be searched and that what is sought, if not contraband or fruits or implements of a crime, will 'aid in a particular apprehension or conviction.'

*State v. Doe*, 115 N.H. 682, 371 A.2d 167, 169 (1975) (citations omitted). *Accord State v. Caicedo*, 599 A.2d 895, 897 (N.H. 1991).

"[The] determination of whether an affidavit in support of a search warrant shows probable cause for issuance of the warrant must be based upon an examination of the four corners of the affidavit." *State v. Iverson*, 364 N.W.2d 518, 522 (S.D.1985).

> In reviewing the affidavits, we should not invalidate the search warrants by interpreting the affidavits in a hypertechnical manner; rather, we should read each affidavit as a whole and interpret each in a common-sense and realistic manner. Oftentimes it is hard to determine when an affidavit demonstrates the existence of probable cause, and the resolution of these marginal cases should be largely determined by the preference to be accorded to warrants. Accordingly, every reasonable inference possible should be drawn in order to support the determination of probable cause by the magistrate.

*State v. Kaseman*, 273 N.W.2d 716, 722–23 (S.D.1978) (citations omitted); *Accord United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Iverson*, 364 N.W.2d at 522.

■ It is common knowledge metal serial number tags riveted to items of machinery do not fall off. They must be removed. Usually, such tags are not removed by the lawful owners, but are removed by thieves to conceal the property's stolen status and to make recovery of the property more difficult.[4] "The Fourth Amendment does not deny law enforcement officers the support of the usual inferences ... reasonable men draw from the evidence, ... it requires [only] that such inferences be drawn by a neutral and detached magistrate." *State v. DeSmidt*, 155 Wis.2d 119, 454 N.W.2d 780, 787 (1990), *cert. dismissed*, —— U.S. ——, 111 S.Ct. 721, 112 L.Ed.2d 709 (1991). We conclude, even after redaction of the anonymous tip, adequate probable cause existed to issue the search warrant and we affirm the trial court's refusal to suppress evidence seized with that warrant.[5] Although not briefed

---

**4.** Admittedly, Sergeant Folkerts could have drawn a more thorough affidavit to include similar previous acts committed by Lodermeier, and his professional knowledge that such tags are normally removed by criminals to conceal their crimes.

**5.** The magistrate's finding of probable cause is bolstered by cases which have held discovering property with serial numbers removed in suspicious circumstances provides probable cause that the items were seizable: *State v. Connard*, 81 N.C.App. 327, 344 S.E.2d 568, 573 (1986), *aff'd*, 319 N.C. 392, 354 S.E.2d 238 (1987); *State v. Sanders*, 431 So.2d 1034 (Fla.App.1983); *DePalma v. State*, 228 Ga. 272, 185 S.E.2d 53, 56 (1971).

or argued by either party, given our holding in part III–B, a search warrant may not have been necessary given the fact the large Bobcat was in a public alley in open view to the officers and apparently the "hidden" serial numbers could be read without physical intrusion.

### B. *Seizure of Lawn Tractor Without a Warrant:*

In May 1987, Detective Prince of the Sioux Falls Police Department noticed a Model 116 John Deere lawn tractor mounted on a trailer in front of Lodermeier's residence. Prince was at the residence to question Lodermeier about some stolen furniture. There was a spot on the right side of the lawn tractor that he thought may have once held a serial number. The officer's experience with vehicle identification numbers (VINs) was such numbers generally are removed intentionally and do not fall off. Their suspicions aroused, Prince and Folkerts contacted a John Deere dealer and confirmed the spot on the lawn tractor should have had a serial number. When asked about the location of a possible hidden serial number, however, the manager of the dealership was unable to provide any information.

In November of 1987, Lodermeier reported a ladder stolen. Detectives Prince and Folkerts went to Lodermeier's home to investigate. Lodermeier was not there, but the lawn tractor was in the driveway. The officers called the John Deere Company in order to ascertain whether any hidden serial numbers existed. They were told they could find a hidden serial number on the lawn tractor's transaxle. The officers went back purportedly to talk to Lodermeier about the stolen ladder. Lodermeier did not answer the door. The officers approached the lawn tractor, still in the driveway, and found the transaxle number. The officers did not move the lawn tractor or any other item in the driveway. They merely stooped over, observed the number, and recorded it.

The officers called the John Deere Company again. Based on the transaxle serial number, they learned the lawn tractor had been stolen. The officers returned and seized the lawn tractor from Lodermeier's driveway the same day. Lodermeier claims the seizure was illegal as it did not fall within the "plain view" exception to the search warrant requirement. We believe the seizure was proper.

Crucial to our determination of whether the seizure of the lawn tractor was legal is whether Lodermeier had a reasonable expectation of privacy. If Lodermeier had no reasonable expectation of privacy, no "search" within the meaning of the Fourth Amendment occurred. *State v. Myers*, 117 Wash.2d 332, 815 P.2d 761, 768–69 (1991); *State v. Davis*, 228 N.W.2d 67, 72 (Iowa 1975); *People v. Brewer*, 112 Mich.App. 670, 317 N.W.2d 218 (1981). *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) ("What a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection."). For the reasons given below, we conclude no search was conducted and the seizure was proper.

■ As to the garden tractor itself, no physical intrusion was required. Detective Prince merely read the "hidden" serial number on the transfer case underneath the tractor. Thus, examining the serial number on the transaxle of the lawn tractor was not a "search" for purposes of fourth amendment analysis. *See Arizona v. Hicks*, 480 U.S. 321, 325, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347, 354 (1987) (no search where officer merely recorded serial numbers without disturbing equipment); *New York v. Class*, 475 U.S. 106, 114, 106 S.Ct. 960, 966, 89 L.Ed.2d 81, 90 (1986) (no expectation of privacy in VINs because they are normally in plain view, and motor vehicles are pervasively regulated).

Nor does the fact that the tractor was located on private property alter our conclusion. The lawn and garden tractor was in Lodermeier's driveway in open view to Detective Prince and Sergeant Folkerts who were lawfully on Lodermeier's property to question him about a ladder he had reported stolen.

"The standard for determining when the search of an area surrounding a residence violates fourth amendment guarantees no longer depends on outmoded property concepts, but whether the defendant has a legitimate expectation of privacy in that area." *United States v. Ventling*, 678 F.2d 63, 66 (8th Cir.1982). *Accord State v. Wellner*, 318 N.W.2d 324, 328 (S.D.1982) (citing *Rakas v. Illinois*, 439 U.S. 128, 143–44 n. 12, 99 S.Ct. 421, 430–31 n. 12, 58 L.Ed.2d 387, 401 n. 12 (1978)). Various factors determine whether one has a reasonable expectation of privacy outside the home. They include:

1) whether the area is part of the curtilage;

2) whether the area is open to public view;

3) whether the property is owned or controlled by the defendant;

4) whether there are obstructions to vision of others outside the property; and

5) whether the area is frequented by strangers.

*People v. Dinsmore*, 103 Mich.App. 660, 303 N.W.2d 857, 861 (1981). *See also Wellner*, 318 N.W.2d at 328. A driveway is a "semi-private area." *Finch v. State*, 644 P.2d 1378, 1380 (Okla.Crim.App.1982). Even though it is part of the curtilage, a police officer with legitimate business may enter a driveway and, while there, may inspect objects in open view to discover whether they are stolen. *State v. Crea*, 305 Minn. 342, 233 N.W.2d 736, 739 (1975).[6] If the officer discovers evidence of a crime, he may seize it. *Dinsmore*, 303 N.W.2d at 863. *See also Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980) ("objects such as weapons or contraband found in a public place may be seized by the police without a warrant"). We do not believe the trial court abused its discretion in refusing to suppress the seized lawn and garden trac-

tor as evidence in Lodermeier's prosecution.

### C. Warrantless Search of Small Bobcat:

On March 25, 1988, police officers discovered the small Bobcat on the street in front of Lodermeier's residence. It was sitting on a trailer which was parked over three and one-half feet from the curb. Because they constituted a hazard, the trailer and Bobcat were impounded. The officers noted the trailer was registered to Lodermeier, and the conspicuous, externally mounted serial number plate had been removed. The damaged rivets remained. Based on this knowledge, as well as the fact Lodermeier had recently been found in possession of stolen property, Folkerts and Prince uncovered the Bobcat's engine to find its hidden serial number. The engine number plate had also been removed, but the hidden engraved serial number was still in place. That number established the Bobcat as the one stolen from Mark's Machinery. Lodermeier argues this search was an impermissible infringement of his fourth amendment rights. We disagree.

In *State v. Thomale*, 317 N.W.2d 147, 149 (S.D.1982), we stated:

The United States Supreme Court in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), established a test for determining standing to dispute a search and seizure. The test is whether government officials violated any legitimate expectation of privacy held by the defendant.... The burden of proof is on [the] defendant to show that he had a legitimate expectation of privacy in the searched area.

We held Thomale failed to establish standing to raise a fourth amendment claim where he had borrowed a leased automobile from the renter as the lease agreement did not list Thomale as a lessee and prohibited sub-leasing the vehicle. *Id.*

---

**6.** Various courts have upheld warrantless entries onto driveways, carports, front walks, and porches as non-intrusive. *E.g. Ventling*, 678 F.2d at 66; *State v. Seagull*, 95 Wash.2d 898, 632 P.2d 44, 46–49 (1981) (citing cases) (police viewed marijuana plants from back door); *Pis-*

*tro v. State*, 590 P.2d 884 (Alaska 1979) (observation of stolen car from driveway); *State v. Wilbourn*, 364 So.2d 995 (La.1978), *cert. denied*, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979) (observation of defendant's vehicle from driveway).

Likewise, in *State v. Caffrey*, 332 N.W.2d 269, 274 (S.D.1983), we held the appellant could not establish a legitimate expectation of privacy in an automobile he had borrowed without permission.

Numerous courts have held a person in possession of a stolen automobile does not have standing to challenge a search of that vehicle. *See, e.g., United States v. Lanford*, 838 F.2d 1351 (5th Cir.1988); *Hill v. State*, 299 Ark. 327, 773 S.W.2d 424 (1989); *Sandborn v. State*, 251 Ga. 169, 304 S.E.2d 377 (1983); *State v. McFarland*, 195 Neb. 394, 238 N.W.2d 237, 239–40 (1976); *Jackson v. State*, 745 S.W.2d 4 (Tex.Crim.App.), *cert. denied*, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988). Thus, Lodermeier has not established standing with respect to the stolen Bobcat and cannot object to the warrantless search of it. We affirm the trial court in refusing to suppress the stolen equipment as evidence.

## IV.

■ During the trial, the State was permitted, over Lodermeier's objection, to present evidence that Lodermeier had been caught in possession of a stolen Case loader backhoe in 1984 and had removed a stick-on dealer label containing an invoice number after he was stopped. The prior act was admitted to show absence of mistake on Lodermeier's part and that he had guilty knowledge at the time he possessed the stolen machinery or that he possessed items with the serial numbers removed knowingly. Guilty knowledge was an essential element in the State's case. Absence of guilty knowledge was one of Lodermeier's main defenses at trial (one defense theory being that he was framed).

The admissibility of other acts evidence is governed by SDCL 19–12–5 (1987), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation plan, *knowledge*,

identity, or *absence of mistake or accident*. (Emphasis added).

We have previously stated:

When ruling on the admissibility of other acts evidence, a trial court must determine: (1) whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case [SDCL 19–12–1 (1987)], and (2) whether the probative value of the evidence is substantially outweighed by its prejudicial effect [SDCL 19–12–3 (1987)].... Whether the probative value of the proffered evidence is substantially outweighed by its prejudicial effect is a question left to the sound discretion of the trial court, and on appeal, the trial court's decision will not be disturbed absent a clear abuse of discretion.

*State v. Basker*, 468 N.W.2d 413, 415–16 (S.D.1991) (footnote & citations omitted).

Lodermeier initially argues the trial court neglected to determine on the record whether the probative value of the evidence was substantially outweighed by its prejudicial effect as required by *State v. Dickey*, 459 N.W.2d 445, 449 (S.D.1990) and *State v. Klein*, 444 N.W.2d 16, 18–19 (S.D. 1989). The trial transcript indicates otherwise. Immediately prior to trial, the court ruled the prior incident would be admitted to show intent or absence of mistake or accident and that the evidence was more probative than prejudicial.

Second, Lodermeier argues the prior incident was so dissimilar from the case at bar that the evidence was not probative. This argument is based on the fact the tag removed in the prior incident was not a riveted serial number tag, but was instead a dealer decal with an invoice number.

■ A prior act admitted to show guilty knowledge need not be identical to the crime charged. It need only be "reasonably related to the offending conduct." *Klein*, 444 N.W.2d at 19 (quoting *State v. Pedde*, 334 N.W.2d 41, 43 (S.D.1983)); *United States v. Gocke*, 507 F.2d 820, 825 (8th Cir.1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975). In other words, it need only be "sufficiently similar to support an inference of criminal

intent." *United States v. Burkett,* 821 F.2d 1306, 1309 (8th Cir.1987).

Although the decal taken from the Case was not a riveted serial number tag, it did have identifying information (the name of the dealer and an invoice number). In addition, the Case was equipment very similar to two of the pieces of equipment found at Lodermeier's residence. The Case was stolen within two weeks of the thefts of the large Bobcat and the lawn tractor which were recovered at Lodermeier's residence. The incident involving the Case shared similar physical elements with the crimes charged (possession of stolen property). All involved the same state of mind (knowing possession). *See* E. Imwinkelried, *Uncharged Misconduct Evidence* § 5.08 (1984). We believe the prior incident was highly probative to show Lodermeier did not possess the stolen machinery innocently and did not possess machinery with serial numbers removed innocently.

■ Finally, Lodermeier argues, because the prior act involved the same type of machinery, the evidence was so prejudicial that it substantially outweighed its probative value.

> Other acts evidence has a prejudicial effect if it has the capacity to persuade by illegitimate means which result in the state's having an unfair advantage. Such evidence is not prejudicial merely because its legitimate probative force damages the defendant's case.

*State v. Goodroad,* 442 N.W.2d 246, 250 (S.D.1989).

We note the trial court gave the jury a proper limiting instruction as to the proper use to be made of the prior bad act evidence. It also refused to admit evidence of other, less relevant aspects of the prior incident (the name of the federal conviction—receiving, interstate transportation of stolen property—and the fact Lodermeier misrepresented his identity). The admission of a prior conviction will usually result

in some prejudice to a defendant. *State v. Titus,* 426 N.W.2d 578, 580 (S.D.1988). However, here the prejudice was not unfair. Lodermeier's state of mind was directly at issue. We conclude the trial court did not abuse its discretion in admitting the prior possession of stolen property.

### V.

■ Relying on *State v. Howell,* 354 N.W.2d 196 (S.D.1984), Lodermeier argues the trial court committed reversible error in failing to instruct the jury that they were required to find someone else had stolen the machinery involved before they could find Lodermeier guilty of possessing stolen property.

However, the *Howell* holding was based upon the State's failure to file a notice of review. Based on our holding in *State v. Esslinger,* 357 N.W.2d 525, 533 (S.D.1984), we find this issue meritless. *See also Lawrence,* 312 N.W.2d at 252.

### VI.

After his conviction, Lodermeier moved for a new trial based on irregularities in the proceedings and on newly discovered evidence. The trial court denied that motion. Lodermeier contends he should have been granted a new trial pursuant to SDCL 15–6–59(a)(1).[7] We initially note the decision whether to grant a new trial is within the sound discretion of the trial court, "whose superior knowledge of all the facts and circumstances of the case enables him to know the requirements of justice." *State v. Collier,* 381 N.W.2d 269, 272 (S.D. 1986). *Accord State v. Willis,* 396 N.W.2d 152, 153 (S.D.1986); *State v. Dupris,* 373 N.W.2d 446, 448 (S.D.1985); *Swallow,* 350 N.W.2d at 611.

#### A. *Failure to Disclose the Name of a Confidential Informant:*

The affidavit in support of the search warrant used by police to seize the large Bobcat was based, in part, upon informa-

---

7. SDCL 15–6–59(a)(1) (1984) provides:

> A trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

> (1) Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial[.]

tion received from a confidential informant who, it was later learned, was Dean Johnson, Detective Prince's estranged nephew.[8] Prior to trial, Lodermeier requested disclosure of the informant's identity. The trial court ordered the State to comply "to the extent any information the State had was exculpatory." State replied it knew little about the informant and did not plan to call him at trial. In fact, Johnson was not called at trial.

Johnson was hired by Lodermeier's mother while Lodermeier was in prison. Lodermeier's defense theory was, because he fired Johnson upon his release from prison, Johnson set him up. It became apparent prior to trial the informant's identity was well known to Lodermeier. At a pretrial bond hearing, a witness testified Lodermeier knew Johnson had turned him in to the police, and wanted Johnson to "disappear." Because of this evidence, Lodermeier was denied bail.

'In order to prevail, defendant must show that he was hindered in presenting a defense at trial by refusal to disclose the informant's identity.' The public's interest in protecting the flow of information must be balanced against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.

*Wellner*, 318 N.W.2d at 332 (citations omitted). "Irrespective of the good or bad faith of the prosecution, ... suppression of evidence favorable to an accused upon request violates due process where evidence is *material* to either guilt or punishment." *Collier*, 381 N.W.2d at 272 (emphasis changed) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963)).

The burden is on the defendant to show the materiality of the informant's identity by more than mere speculation. *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir.1991); *United States v. Parker*, 836 F.2d 1080, 1083 (8th Cir.1987), *cert. denied*, 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988). We stated in *Ashker v. Solem*, 457 N.W.2d 473 (S.D.1990), "we are bound by the *Bagley* test [*United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985)] which requires the court to be convinced, from a review of the entire record that had the evidence withheld been made available, the jury probably would have reached a different result." *Id.* at 478. We are not convinced.

Lodermeier argues that, had the State admitted Johnson was its informant, his theory that he had been set up would have been more believable. The trial court concluded there was no reasonable probability the outcome of the trial would have been different had Johnson's identity been revealed. We agree. We conclude, after reviewing the record, the defense request was based on speculation.[9] Thus, Lodermeier failed to satisfy his burden of showing the informant's identity was material to the defense. Moreover, where an informant's identity is already known to a defendant, nondisclosure by the prosecution does not warrant a new trial even if it is material to the defense. *United States v. Johnson*, 892 F.2d 707, 709–10 (8th Cir. 1989); *Parker*, 836 F.2d at 1083–84; *United States v. Barnes*, 486 F.2d 776, 778–79 (8th Cir.1973); *Churder v. United States*, 387 F.2d 825, 831 (8th Cir.1968). *Cf. United States v. Partyka*, 544 F.2d 345 (8th Cir.1976) (disclosure of informant required where informant had used defendant's car, tipped police about drugs inside, and was being prosecuted for drug violations). If the informant's identity is known, it is up

---

**8.** This portion of the search warrant was redacted by the trial court during the suppression hearing.

**9.** It is particularly difficult to believe Lodermeier's theory where an affidavit filed by his own investigator reveals that Johnson and Prince had not spoken to each other for over a decade.

Nor does Lodermeier's theory explain how he could innocently possess three pieces of stolen machinery. He attempts to explain this by stating he was incarcerated. Yet, the stolen property was discovered *at his residence* a *year* after he was released.

to the defense to question prosecution witnesses about the informant's involvement in the investigation, or call the informant as a witness. *Parker*, 836 F.2d at 1083–84. Thus, we do not believe the trial court abused its discretion in denying Lodermeier a new trial based on the State's failure to disclose Dean Johnson as the "confidential" informant in this case.

### B.  *Discovery of New Evidence:*

■ Lodermeier contends he is entitled to a new trial based on newly discovered evidence via SDCL 15–6–59(a)(4).[10] In determining whether a new trial should be granted, the trial court is required to find the new evidence is not cumulative and there is a "reasonable probability" that it would produce a different result on retrial. *Willis*, 396 N.W.2d at 153–54. We do not believe this newly discovered evidence would lead to a different result on retrial.

■ Lodermeier claims after the trial he found out Johnson buried the serial number of the large Bobcat on one of Lodermeier's rental properties. Lodermeier's motion for a new trial is supported by Cleda Gerhart's affidavit which states Lee Erickson told her Johnson told him that he (Johnson) buried serial numbers by a lake. Erickson filed an affidavit denying this story. Similarly, Johnson, by affidavit, denies having buried any serial numbers. Thus, the only way this evidence could be presented at a new trial is through Gerhart's testimony. This presents an obvious hearsay problem. *See State v. Rufener*, 401 N.W.2d 740, 743–44 (S.D.1987); *State v. Gage*, 302 N.W.2d 793, 798–99 (S.D. 1981). Lodermeier's attempt to sidestep this problem is not persuasive. At trial, Gerhart would not be permitted to testify that Johnson buried the numbers. Thus, if a new trial were conducted, there is no reasonable probability the outcome would be different.

■ Finally, Lodermeier asserts he should have been granted a new trial be-

cause new evidence has surfaced regarding the credibility of a prosecution witness, one Joan Bresson. Bresson was one of several witnesses who testified Lodermeier had asked them to concoct stories or evidence. She testified Lodermeier had asked her husband to commit perjury on his behalf. Bresson's husband was in prison at the time of trial. Bresson testified she expected no benefit for herself or her husband in exchange for her testimony.

In his new trial motion, Lodermeier claimed Bresson had smuggled hacksaw blades to another inmate. Because Bresson was not charged, Lodermeier concludes she was offered leniency in exchange for her trial testimony. The former prosecutor and the law enforcement officers supposedly involved in the deal have filed affidavits indicating no such deal was made.

We have repeatedly held when newly discovered evidence would merely impeach or discredit a trial witness, a new trial is not warranted. *Willis*, 396 N.W.2d at 154; *Kaseman*, 273 N.W.2d at 729; *State v. Furlow*, 87 S.D. 634, 638, 213 N.W.2d 705, 707 (1973). In addition, we note Bresson's testimony regarding Lodermeier was cumulative. Two other witnesses testified Lodermeier asked them to manufacture evidence. There is no reasonable probability that a different outcome would be reached on retrial if this "new evidence" were permitted. Thus, Lodermeier is not entitled to a new trial based on this newly discovered impeachment evidence.

For the foregoing reasons, we conclude the trial court did not abuse its discretion in denying Lodermeier's motion for a new trial.

The jury verdict and judgment of the trial court is affirmed.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.

---

**10.** SDCL 15–6–59(a)(4) (1984) provides:

A new trial may be granted ... for any of the following causes:

(4) Newly discovered evidence, material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial[.]