*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 42**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

ROGER EDWARD TAYLOR,
*Appellant.*

No. 20130556
Filed March 31, 2015

Third District, Salt Lake
No. 111906891
The Honorable Elizabeth A. Hruby-Mills

Attorneys:

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Att'y Gen.,
Salt Lake City, for appellee

Joan C. Watt, Michael D. Misner, Salt Lake City, for appellant

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUDGE ORME joined.

Due to his retirement, JUSTICE NEHRING did not participate herein;
COURT OF APPEALS JUDGE GREGORY K. ORME sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument in this matter, and
accordingly did not participate.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1   Roger Taylor was charged with multiple counts of securities fraud and theft on the basis of his alleged operation of a Ponzi scheme. Mr. Taylor asked the district court to dismiss eight of the ten charges based on the applicable statutes of limitations. The district court concluded that securities fraud and theft are continuing offenses and evaluated the timeliness of the charges accordingly. On interlocutory review, we hold that securities fraud and theft are not

continuing offenses and therefore remand the case to the district court to re-evaluate the timeliness of the charges in light of our holding.[1]

## BACKGROUND

¶2    Mr. Taylor and Richard Smith are alleged to have operated a Ponzi scheme in which multiple investors lost large sums.[2] They initiated the alleged scheme by founding an investment firm known as Ascendus Capital Management. Once clients deposited money with Ascendus, Mr. Taylor and Mr. Smith created false account statements reflecting investment gains to lure further funds from their clients. Later, Mr. Taylor and Mr. Smith founded the Franklin Forbes Composite Fund. They asked existing clients to transfer funds to Franklin Forbes, assuring them that the investment was safe. Mr. Taylor and Mr. Smith falsely represented that Franklin Forbes would be investing in Lyxor, a French asset-management company, and that the investment would be guaranteed by Société Générale, a well-known and prestigious French bank. Instead, Mr. Taylor and Mr. Smith placed the funds in a larger Ponzi scheme in California, used some of the funds to pay other investors, and raided the remaining funds to pay personal expenses. Mr. Taylor and Mr. Smith again created false account statements showing investment gains to lull investors. Eventually, however, the Ponzi scheme collapsed and the "guaranteed" investments were lost.

¶3    On August 13, 2010, the State filed an information charging Mr. Taylor with two counts of securities fraud and one count of abuse, neglect, or exploitation of the elderly. One year later, on August 30, 2011, the State amended the information. Less than one month later, when the State failed to appear at a scheduling conference, the district court dismissed the case without prejudice.

---

[1] In a companion case issued today, we address the same question with respect to the communications fraud statute, Utah Code section 76-10-1801. *State v. Kay*, 2015 UT 43, __ P.3d __.

[2] Because this case comes to us on an interlocutory appeal, the facts have yet to be determined. On interlocutory review, we recount the facts as alleged and in a light most favorable to the ruling below. *Cf. Peck v. State*, 2008 UT 39, ¶ 2, 191 P.3d 4 ("On appeal from a motion to dismiss, 'we review the facts only as they are alleged in the complaint.' We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff.").

The State refiled a substantially similar information the same day, September 22, 2011, charging Mr. Taylor with five counts of securities fraud, four counts of theft, and one count of engaging in a pattern of unlawful activity, all second-degree felonies. It is this last information that is at issue here.

¶4 Mr. Taylor filed a motion to dismiss, claiming that four of the five securities fraud charges and the four theft charges were time barred. The district court denied the motion as to the four securities fraud charges and three of the theft charges after ruling that securities fraud and theft are both continuing offenses for which the limitations period did not begin to run until Mr. Taylor sent the last false account statement to investors.

¶5 The four securities fraud charges at issue in this case are based upon four separate investments in Franklin Forbes. Counts 1 and 2 are based on two investments by A.D. She began investing through Ascendus as early as June 2003 and, over the years, invested about $600,000. On the basis of false information from Mr. Taylor, A.D. transferred her Ascendus investment to Franklin Forbes in February 2006. And in July 2006, she invested an additional $401,000. Mr. Taylor then sent A.D. false account statements showing investment gains through December 2007.

¶6 Counts 6 and 7 arise from similar transfers by other investors. The factual predicate for count 6 is an $800,000 investment by W.M. and K.M. that they moved from their Ascendus account to Franklin Forbes in February 2006. W.M. and K.M. received false account statements through May 2008. The factual predicate for count 7 is an investment by A.W., who transferred almost $1.8 million from Ascendus to Franklin Forbes in February 2006. A.W. received false account statements through April 2007.

¶7 The three theft charges at issue are based on Mr. Taylor's unauthorized use or withdrawal of funds from Franklin Forbes. Count 5 arises from Mr. Taylor's unauthorized use of funds from E.K. In March 2007, E.K. invested approximately $330,000 in Franklin Forbes with express direction that it be used for investment. But Mr. Taylor withdrew the funds soon thereafter and used them for another purpose. Mr. Taylor then sent E.K. false account statements showing investment gains through April 2008.

¶8 Counts 9 and 10 arise from Mr. Taylor's misuse and withdrawal of funds belonging to unknown investors. Count 9 arises from misuse of over $1.5 million removed from Franklin Forbes as

late as January 2008. And Count 10 is based on a final withdrawal of funds from Franklin Forbes by Mr. Taylor as late as August 2008.

¶9    Following the district court's denial of his motion to dismiss, Mr. Taylor filed a petition for interlocutory review, which the court of appeals granted. It then certified the interlocutory appeal to this court. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

**STANDARD OF REVIEW**

¶10 The issue of whether securities fraud and theft are continuing offenses is one of statutory construction. We give no deference to the district court's ruling on such an issue and instead review it for correctness.[3]

**ANALYSIS**

¶11 The district court concluded that securities fraud, in violation of Utah Code section 61-1-1, and theft, in violation of Utah Code section 76-6-404, are continuing offenses. On the basis of that conclusion, the district court determined that none of the securities fraud counts and only one of the four theft counts were time barred. Mr. Taylor contends that neither securities fraud nor theft is a continuing offense and, therefore, that the charges are not timely. We agree with Mr. Taylor that securities fraud and theft are not continuing offenses and therefore remand the case to the district court to re-evaluate the timeliness of the charges.

I. THE TEST FOR CONTINUING OFFENSES

¶12  We are asked to determine whether the criminal charges in this case are time barred. In general, "a prosecution for" a felony, misdemeanor, or infraction "shall be commenced within" four, two, or one year, respectively, "after it is committed."[4] If the State does not commence prosecution within this period, any criminal liability will expire. The limitations period begins to run when a crime is "committed."[5] A crime is committed when every "element of the

---

[3] *State v. Lusk*, 2001 UT 102, ¶¶ 10–11, 37 P.3d 1103.

[4] UTAH CODE § 76-1-302(1); *see also id.* § 61-1-21.1(1) ("No indictment or information may be returned . . . [for securities fraud] more than five years after the alleged violation.").

[5] *See id.* § 76-1-302; *see also Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 ("As a general rule, a statute of
(continued...)

offense" is met.[6] But the Legislature has structured the elements of some offenses in such a way that a perpetrator continues to commit the offense so long as he continues to satisfy the elements. These offenses are considered continuing offenses. In the case of a continuing offense, while criminal liability attaches when every element is satisfied, the statute of limitations does not begin to run until the perpetrator ceases to satisfy the elements of the crime.[7] At that point, the whole arc of criminal conduct is aggregated into a single criminal violation.

¶13  In determining whether a crime is a continuing offense, the United States Supreme Court looks to the intent of Congress. In *Toussie v. United States*, it recognized the inherent tension between the policies underpinning statutes of limitations—preventing prosecution of stale claims and motivating prompt investigation of crimes—and the imposition of criminal liability for proscribed acts.[8] With that tension in mind, the Court reasoned that criminal statutes should not be interpreted to create a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."[9] Other states considering this question have looked to *Toussie*, either adopting its language or citing its reasoning.[10]

---

[5](...continued) limitations begins to run upon the happening of the last event necessary to complete the cause of action." (internal quotation marks omitted)).

[6] *See State v. Roth*, 2001 UT 103, ¶ 14, 37 P.3d 1099 (surveying cases and holding that the crime of escape was complete when the defendant left official custody without authorization).

[7] 22 C.J.S. *Criminal Law* § 256 (2015) ("Although normally a statute of limitation begins to run from the time the crime is complete, if the crime is a continuing one the statute does not begin to run until the continuous commitment of the crime ceases."); *see also* WAYNE R. LAFAVE ET AL., 5 CRIMINAL PROCEDURE § 18.5(a) (3d ed. 2007).

[8] 397 U.S. 112, 114–15 (1970).

[9] *Id.* at 115.

[10] *See, e.g., People v. Thoro Prods. Co.*, 70 P.3d 1188, 1193–94 (Colo. 2003); *State v. Francois*, 577 N.W.2d 417, 418 (Iowa 1998); *State v. Gainer*, 608 P.2d 968, 970 (Kan. 1980); *State v. Mullin*, 886 P.2d 376,

(continued...)

¶14  The *Toussie* analysis is generally consistent with our long-standing approach to statutory construction. Our objective in construing statutes is to effectuate the intent of the Legislature as expressed in the statutory text.[11] Thus, to determine whether a criminal statute creates a continuing offense, we look to the plain meaning of the enacted text, considering that text in the context of the whole statute.[12] And we harmonize the statute with related provisions of the code, including any applicable statutes of limitations.[13]

¶15  In sum, we respect the legislative policy choice reflected in a clear statute of limitations and will effectuate that protection except in those instances where we find clear, contrary legislative intent in the terms of the substantive criminal statute at issue. In this case, we are asked to determine whether securities fraud and theft are continuing offenses. We turn first to securities fraud and then to theft.

## II. SECURITIES FRAUD IS NOT A CONTINUING OFFENSE

¶16  The district court concluded that securities fraud, in violation of Utah Code section 61-1-1, is a continuing offense. On the basis of that conclusion, it determined that the securities fraud charges against Mr. Taylor were not time barred because Mr. Taylor continued the crimes by sending false account statements to lull the investors after the securities transactions were complete. Mr. Taylor argues that the district court's determination was in error because the statutory language criminalizing securities fraud does not give rise to a continuing offense. Therefore, the statute of limitations began to run at the time that the securities transactions were complete. We agree with Mr. Taylor that securities fraud is not a continuing offense.

---

[10](...continued)
378 (Mont. 1994); *State v. Nuss*, 454 N.W.2d 482, 485–86 (Neb. 1990); *State v. Legg*, 9 S.W.3d 111, 116 (Tenn. 1999)*; John v. State*, 291 N.W.2d 502, 505 (Wis. 1980); *see also* 22 C.J.S. *Criminal Law* § 256 (2015) ("Whether or not a crime is a continuing offense depends upon the legislative intent in defining the crime . . . .").

[11] *LeBeau v. State*, 2014 UT 39, ¶ 20, 337 P.3d 254.

[12] *See id.*

[13] *See id.*

¶17   The Utah Uniform Securities Act, patterned after section 101 of the Uniform Securities Act of 1956, provides that

> [i]t is unlawful for any person, *in connection with the offer, sale, or purchase of any security*, directly or indirectly to:
>
> (1) employ any device, scheme, or artifice to defraud;
>
> (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.[14]

The act contains a five year statute of limitations that expressly supercedes the general criminal statute of limitations.[15]

¶18   The text of the Utah Uniform Securities Act does not suggest that the Legislature intended securities fraud to constitute a continuing offense. To the contrary, the offense is anchored in the discrete events of an "offer, sale, or purchase of any security."[16] And subsection (2) similarly identifies the discrete acts of "*mak[ing]* any untrue statement [or] . . . *omitt[ing]* to state a material fact."[17]

¶19   In arguing that the Legislature intended securities fraud to constitute a continuing offense, the State points to subsections (1) and (3), which speak of "employ[ing] any . . . scheme . . . to defraud" and "engag[ing] in any . . . practice[] or course of business which

---

[14] UTAH CODE § 61-1-1 (emphasis added).

[15] *Id.* § 61-1-21.1. In the case of the generally-applicable statutes of limitations, the Legislature has provided a safety valve for undiscovered fraud offenses that extends the limitations period for up to three years so long as the prosecution is commenced within one year of the fraud being reported to law enforcement. *Id.* § 76-1-303(1). But that extension is not available in the case of securities fraud, which is governed by its own statute of limitations for which the Legislature has not provided a similar extension mechanism.

[16] *Id.* § 61-1-1.

[17] *Id.* § 61-1-1(2) (emphasis added).

operates . . . as a fraud."[18] It argues that these phrases give rise to a continuing offense. We disagree. While these phrases refer to activities that may continue for a period of time, their presence does not necessarily compel the conclusion that securities fraud is a continuing offense. Rather, they must be read in concert with the statutory requirement that any actionable fraud take place "*in connection with* the offer, sale, or purchase of any security."[19]

¶20 The United States Supreme Court has construed similar language in a federal statute to require that any scheme to defraud be material to a purchase or sale of a covered security. In *Chadbourne & Parke LLP v. Troice,* the Court considered the scope of the statutory phrase "'misrepresentation or omission of a material fact *in connection with* the purchase or sale of a covered security.'"[20] On the basis of "a natural reading of the Act's language," the Court held that "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'"[21] The similar language of the Utah Uniform Securities Act compels a similar conclusion. An activity listed in subsections (1) through (3) cannot be "in connection with [an] offer, sale, or purchase of any security"[22] "unless it is material to a decision by one or more individuals (other than the fraudster)."[23]

¶21 By definition, an act occurring subsequent to a securities transaction cannot be material to the decision to engage in that transaction. It therefore cannot satisfy the elements of securities fraud. Thus, the language of the Utah Uniform Securities Act dictates that the commission of securities fraud terminates and the statute of limitations begins to run when the offer, sale, or purchase is complete, even if some of the activities listed in subsections (1) and

---

[18] *Id.* § 61-1-1(1), (3).

[19] *Id.* § 61-1-1 (emphasis added).

[20] 134 S. Ct. 1058, 1066 (2014) (emphasis added) (construing 15 U.S.C. § 78bb(f)(1)(A)).

[21] *Id.*

[22] UTAH CODE § 61-1-1.

[23] *Chadbourne & Parke*, 134 S. Ct. at 1066.

(3) continue thereafter.[24]

¶22 Related Utah statutes also support our conclusion that the Utah Uniform Securities Act does not create a continuing offense. The discrete acts that often follow securities fraud in a broader arc of fraudulent conduct—like the false account statements in this case—are more appropriately charged under related statutes, such as the communications fraud statute, Utah Code section 76-10-1801. Indeed, that provision specifically criminalizes communications "concealing [a] scheme or artifice."[25] And with that offense, "[r]eliance on the part of any person is not a necessary element."[26] Thus, the separate crime of communications fraud captures subsequent communication designed to conceal securities fraud. Similarly, one of the various theft statutes may apply if the perpetrator takes or disposes of the invested funds with the requisite intent.[27] Finally, in cases involving three or more episodes of unlawful activity, such as securities fraud, communications fraud, and theft, the State may bring charges for engaging in a pattern of unlawful activity.[28] The Legislature's enactment of criminal offenses that more precisely capture the discrete acts that the State contends constitute continuation of securities fraud confirms our conclusion that the Legislature did not intend for securities fraud to be a

---

[24] *See United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir. 1993) ("Mail or securities fraud is not complete, and the statute of limitations does not begin to run, until the sale of the security or the use of the mail. Thus, a securities and mail fraud prosecution falls within the statute of limitations if the use of the mails or the sale of the security occurred within five years of the indictment." (citation omitted) (citing *United States v. Read*, 658 F.2d 1225, 1240 (7th Cir. 1981); *United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992); *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988); *United States v. Perholtz*, 842 F.2d 343, 364–65 (D.C. Cir. 1988) (per curiam); *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975); *United States v. Blosser*, 440 F.2d 697, 699 (10th Cir. 1971))).

[25] UTAH CODE § 76-10-1801(1).

[26] *Id.* § 76-10-1801(3).

[27] *See, e.g., id.* § 76-6-404 (Theft); *id.* § 76-6-405 (Theft by deception); *id.* § 76-6-406 (Theft by extortion); *id.* § 76-6-408 (Receiving stolen property).

[28] *Id.* § 76-10-1603.

continuing offense. Instead, the Legislature has criminalized each discrete unit of criminal activity and, in extended cases, the pattern of unlawful activity itself.

¶23  In this case, the district court evaluated the timeliness of the securities fraud charges on the basis of its erroneous conclusion that securities fraud is a continuing offense. In light of our contrary holding, we remand this case to the district court to engage in a factual assessment to determine for each count of securities fraud when the offer, sale, or purchase took place and whether the charge was filed not more than five years later.[29]

¶24  In sum, we hold that securities fraud, in violation of Utah Code section 61-1-1, is not a continuing offense. Instead, the crime of securities fraud is complete and the statute of limitations begins to run when an "offer, sale, or purchase" is made "in connection with" an activity specified in subsections (1) through (3).

## III. THEFT IS NOT A CONTINUING OFFENSE

¶25  The district court concluded that theft, in violation of Utah Code section 76-6-404, is a continuing offense. On the basis of that conclusion, the district court determined that only one of the theft counts are time barred because Mr. Taylor continued to commit theft by sending false account statements to conceal his crime. Mr. Taylor argues that the district court erred because the statutory language does not convey a clear legislative intent that theft is a continuing offense. Rather, he contends that the statute of limitations began to run at the time that he first obtained or exercised unauthorized control over the funds. We agree with Mr. Taylor that theft is not a continuing offense.[30]

¶26  Under the Utah Criminal Code,

> [a] person commits theft if he obtains or exercises unauthorized control over the property of another

---

[29] *Id.* § 61-1-21.1. We are unable to engage in the determination of timeliness because the record on interlocutory appeal is incomplete and not all relevant facts have been established at this early point in the proceedings.

[30] Courts in our sister states have reached the same conclusion with regard to similarly worded statutes. *See, e.g.*, *State v. Harrison*, 561 N.W.2d 28, 29 (Iowa 1997) (per curiam); *State v. Gainer*, 608 P.2d 968, 971 (Kan. 1980); *State v. Mullin*, 886 P.2d 376, 378 (Mont. 1994).

with a purpose to deprive him thereof.[31]

Theft is subject to the general criminal statute of limitations.[32]

¶27 We see nothing in the statutory language to suggest that theft is a continuing offense. The key actus reus elements of the offense—"obtain[ing] or exercis[ing]"—are discrete acts that are satisfied instantaneously.[33] And the commission of the crime is complete when a person obtains or exercises that control with the requisite intent.[34]

¶28 In arguing that theft is a continuing offense, the State focuses on the statutory language indicating that a person commits theft if he obtains property with a "purpose to deprive."[35] The State reasons that a purpose to deprive may continue beyond the discrete act of obtaining or exercising control. But the phrase "purpose to deprive" simply defines the mens rea element.[36] And that element either exists or does not exist at the time that the person obtains or exercises unauthorized control of another's property. That phrase does not suggest that the Legislature intended theft to constitute a continuing offense.

¶29 Related provisions of the code support the conclusion that theft is not a continuing offense. The acts of "dispos[ing]," "conceal[ing], sell[ing], [or] withhold[ing]" stolen property are more appropriately charged under the receiving stolen property statute, Utah Code section 76-6-408. Thus, the Legislature has provided an additional statute that criminalizes subsequent activity.

¶30 In ruling that theft is a continuing offense, the district court analogized to the single larceny rule, which we recognized in *State*

---

[31] UTAH CODE § 76-6-404. The State makes several arguments based on other variants of theft, such as theft by receiving stolen property. *See id.* § 76-6-408. That section includes an actus reus element of "retain[ing]" stolen property. This case would be different if that provision were at issue. But Mr. Taylor was charged under section 76-6-404. We therefore focus our analysis on the text of that section, which does not contain such language.

[32] *Id.* § 76-1-302.

[33] *Id.* § 76-6-404.

[34] *State v. Eagle*, 611 P.2d 1211, 1213 (Utah 1980).

[35] UTAH CODE § 76-6-404.

[36] *See id.* § 76-6-401(3).

*v. Crosby*[37] and *State v. Kimbel.*[38] The single larceny rule, as applied in those cases, allows the aggregation of multiple takings over a period of time into a single charge of theft.[39] But that rule and those cases are inapplicable to the charges in this case, which each involve only a single taking. Indeed, nothing in those cases supports the proposition that a single commission of theft continues beyond the last taking.[40]

¶31   The district court's determination that the theft charges were timely was premised upon its erroneous conclusion that theft is a continuing offense. Because we reverse the district court on that issue, we remand this case to the district court to reassess the timeliness of the theft charges in light of our holding. That court is better able to determine for each theft count when Mr. Taylor obtained or exercised unauthorized control of another's property and whether the corresponding charge was filed within four years of that date.[41]

¶32   In sum, we hold that theft, in violation of Utah Code section 76-6-404, is not a continuing offense. The crime of theft is complete and the statute of limitations begins to run when a person "obtains or exercises unauthorized control" over the property of another with the requisite intent.

## CONCLUSION

¶33 The district court concluded that securities fraud, in violation of Utah Code section 61-1-1, and theft, in violation of Utah code section 76-6-404, are continuing offenses. This conclusion was in error. We therefore reverse the ruling of the district court and remand the matter for further proceedings consistent with this opinion.

---

[37] 927 P.2d 638 (Utah 1996).

[38] 620 P.2d 515 (Utah 1980).

[39] *See Crosby*, 927 P.2d at 645–46; *Kimbel*, 620 P.2d at 518.

[40] Other states have come to a similar conclusion. *See, e.g.*, *Harrison*, 561 N.W.2d at 29–30.

[41] UTAH CODE § 76-1-302(1)(a).