*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 43**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant,*

*v.*

ROCKIE J. KAY,
*Appellee.*

No. 20120299
Filed March 31, 2015

Second District, Ogden Dep't
The Honorable Ernest W. Jones
No. 111901338

Attorneys:

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Att'y Gen.,
Salt Lake City, for appellant

Samuel A. Hood, Ogden, for appellee

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUDGE ORME joined.

Due to his retirement, JUSTICE NEHRING did not participate herein;
COURT OF APPEALS JUDGE GREGORY K. ORME sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument in this matter, and
accordingly did not participate.

JUSTICE PARRISH, opinion of the Court:

### INTRODUCTION

¶1 The State appeals the district court's dismissal of two criminal cases filed beyond the statute of limitations. In two separate cases, the State charged Rockie Kay with multiple counts of communications fraud and one count of a pattern of unlawful activity, all second-degree felonies. The district court dismissed the first case, *Kay I*, on statute-of-limitations grounds after holding that communications fraud is not a continuing offense. The district court dismissed the second case, *Kay II*, as an improper prosecution of the

"same substantive offenses as . . . the previous case" for which the district court had already determined that the statute of limitations had run. We agree with the district court that communications fraud is not a continuing offense and that the State therefore commenced its prosecution against Mr. Kay after the statute of limitations had run. Accordingly, we affirm the dismissal of both cases.

## BACKGROUND

¶2 In June 2006, Terry and Tonya Fowles entered into a construction contract with Mr. Kay to build and finance the construction of their home. They made an initial payment of $50,000 to Mr. Kay, and he obtained financing through a construction loan. During construction, Mr. Kay approached the Fowleses on three separate occasions and asked them for additional money so he could make payments on the construction loan. Mr. Kay told the Fowleses that paying him cash would save them interest on the loan. The Fowleses wrote three additional checks to Mr. Kay, one in July and two in November 2006. In total, the Fowleses paid Mr. Kay $135,000.

¶3 In April 2007, Mr. Kay finished building the home, and Mr. and Mrs. Fowles moved in. They attempted to contact Mr. Kay multiple times to settle payment on the construction loan and to close on additional financing for the home, but Mr. Kay avoided them. Once the Fowleses threatened to contact an attorney, Mr. Kay responded. He explained that he had delayed responding because he was embarrassed to inform them of cost overruns that would necessitate an additional payment of $30,000 before they could close on the home.

¶4 Unsatisfied with Mr. Kay's response, Mr. and Mrs. Fowles filed a civil suit against him in November 2007 and scheduled mediation in March 2008. A few weeks before the mediation, Mr. Kay sent the Fowleses two e-mails stating that he was "still working on getting closed," and that meeting with a mediator was unnecessary. However, the parties did meet for the mediation, during which Mr. Kay admitted that, instead of expending the Fowleses' $135,000 to build the home, he had spent it on business-related expenses, including salaries and overhead costs. Mr. Kay sent the Fowleses three subsequent e-mails in May and June 2008 suggesting that he would eventually meet with them to close on their home. But he never did, and the construction lender foreclosed on the Fowleses' home in June 2008.

¶5   In July 2008, the Fowleses reported Mr. Kay's fraudulent actions to local police. However, the Box Elder County Attorney's Office declined to file charges against Mr. Kay at that time. The Attorney General's Office eventually brought charges against Mr. Kay in June 2011 (*Kay I*), and again in February 2012 (*Kay II*).

¶6   The information in *Kay I* alleged four counts of theft by deception on the basis of Mr. Kay's admission that he used the Fowleses' four checks to fund his own business rather than to build their home. The information included one count of a pattern of unlawful activity spanning from June 6, 2006, when Mr. Kay received the first check, to June 16, 2008, when the Fowleses' home was lost to foreclosure. The count of a pattern of unlawful activity was predicated on the four counts of theft by deception.

¶7   The State later amended the information to replace the four counts of theft by deception with four counts of communications fraud, one for each of the four checks that Mr. Kay had obtained from the Fowleses. The State also amended the charge of a pattern of unlawful activity to predicate it on communications fraud. The district court dismissed the State's charges, concluding that the communications fraud was committed in 2006 when Mr. Kay took the Fowleses' checks. Thus, the *Kay I* information, which was not filed until June 2011, was filed outside of the four-year statute of limitations. The legal predicate for this conclusion was the district court's holding that communications fraud is not a continuing offense that continued during the period in which Mr. Kay attempted to conceal his fraudulent activity. Because the communications fraud charges were time barred, the district court also dismissed the charge of a pattern of unlawful activity, which was predicated on the untimely communications fraud charges.

¶8   Two days later, on February 23, 2012, the State filed *Kay II*, charging Mr. Kay with five counts of communications fraud on the basis of five e-mails Mr. Kay had sent to the Fowleses in 2008. The information in *Kay II* again included one count of a pattern of unlawful activity that the State alleges began on June 6, 2006, when Mr. Kay took the Fowleses' first check, and ended on June 18, 2008, after they lost their home to foreclosure. The district court dismissed *Kay II* with prejudice, concluding that *Kay II* was an improper attempt "to prosecute Defendant for the same substantive offense as in [*Kay I*]." The State timely appealed both cases. The court of appeals consolidated both cases and certified the appeal to us. We have jurisdiction pursuant to section 78A-3-102(3)(b) of the Utah Code.

**STANDARD OF REVIEW**

¶9   The issue of whether communications fraud is a continuing offenses is one of statutory construction.  We give no deference to the district court's ruling on this issue and instead review it for correctness.  *State v. Lusk*, 2001 UT 102, ¶¶ 10–11, 37 P.3d 1103.

**ANALYSIS**

¶10   The State appeals from the district court's dismissal of two separate cases against Mr. Kay.  We address each case in turn.

I. THE DISTRICT COURT CORRECTLY DISMISSED *KAY I*

¶11   The State argues that the district court erred when it held that the charges against Mr. Kay were time barred.  It contends that communications fraud is a continuing offense and that, by concealing his fraudulent scheme, Mr. Kay continued to commit communications fraud.  The State argues this prevented the statute of limitations from beginning to run until March 2008 when Mr. Kay admitted his fraudulent conduct.  Specifically, the State points to the fact that Mr. Kay continued with the construction of the Fowleses' home through 2007, thereby concealing his misappropriation of the funds.  The State further alleges that Mr. Kay acted to conceal the fraud when he solicited an additional $30,000, purportedly to complete work on the home, in late 2007.[1]

*A. Communications Fraud is Not a Continuing Offense*

¶12  In cases involving a continuing offense, the statute of limitations does not begin to run so long as the offense continues.  Here, and in a companion case issued today, *State v. Taylor*, 2015 UT 42, ___ P.3d ___, we address an issue of first impression: when does a criminal offense qualify as continuing, thereby delaying the commencement of the limitations period.

---

[1] The State did not argue below that Mr. Kay's ongoing work on the home and request for an additional $30,000 continued the alleged fraud.  On appeal, the State acknowledges this, but nonetheless asserts that it may rely on that argument here because it is entitled to raise new authority to support the argument it did assert below — that the fraud was continuing.  The State's argument misapprehends our preservation requirement.  Though a party is entitled to rely on new legal authority on appeal, *see Torian v. Craig*, 2012 UT 63, ¶ 20, 289 P.3d 479, it may not raise new factual theories for the first time on appeal.  We will not reverse the district court on the basis of facts that were never presented to it.

¶13 We begin with an overview of our statute-of-limitations law. Section 76-1-302(1)(a) of the Utah Code provides that a felony prosecution "shall be commenced within four years after it is committed." A crime is committed when every element of the statutory definition is satisfied. *See Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 ("[A] statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." (internal quotation marks omitted)).

¶14 Many crimes are complete at the moment of a single, discrete act. For example, the crime of assault is complete when a perpetrator commits an act "with unlawful force or violence[] that causes bodily injury to another." UTAH CODE § 76-5-102(1)(c). Other crimes, however, are continuing. When a crime is continuing, the statute of limitations does not begin to run until the criminal conduct ceases. A classic example of a continuing offense is possession. *See State v. Lawrence*, 312 N.W.2d 251, 253 (Minn. 1981).

¶15 To determine whether an offense is continuing, we turn first to the operative statute,[2] which in this case is the communications fraud statute. *See* UTAH CODE § 76-10-1801. As with any question of statutory interpretation, our primary goal is to effectuate the intent of the Legislature. *State v. Watkins*, 2013 UT 28, ¶ 18, 309 P.3d 209. The best evidence of the Legislature's intent is the statute's plain language. *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863. Further, "we interpret[] statutes to give meaning to all parts, and avoid[] rendering portions of the statute superfluous." *Watkins*, 2013 UT 28, ¶ 23 (alterations in original) (internal quotation marks omitted).

¶16 Utah's communications fraud statute makes it a crime to

> devise[] any scheme or artifice to defraud another or
> to obtain from another money, property, or anything
> of value by means of false or fraudulent pretenses,
> representations, promises, or material omissions, and
> . . . communicate[] directly or indirectly with any
> person by any means for the purpose of executing or

---

[2] This approach to statutory construction is generally consistent with the approach adopted by the United States Supreme Court and other courts in determining whether a criminal statute creates a continuing offense. *See Toussie v. United States*, 397 U.S. 112, 114–15 (1970); *State v. Taylor*, 2015 UT 42, ¶ 13, ___ P.3d ___; *People v. Thoro Prods. Co.*, 70 P.3d 1188, 1193–94 (Colo. 2003)

concealing the scheme or artifice.

UTAH CODE § 76-10-1801(1). The language of the statute is unambiguous: communications fraud is complete the moment a perpetrator "communicates directly or indirectly with any person by any means for the purpose of executing or concealing" a devised fraudulent scheme. *Id.* The crime is complete when the communication is made.

¶17 Moreover, even if the elements of the crime did not sufficiently define when communications fraud is complete, the Legislature has conclusively answered the question. Subsection (5) of the communications fraud statute provides, "Each separate communication made for the purpose of executing or concealing a scheme or artifice described in Subsection (1) is a separate act and offense of communication fraud." *Id.* § 76-10-1801(5). This provision explicitly states the Legislature's intent that each separate act of communications fraud is a distinct, complete crime.

¶18 The State argues that subsection (1)'s reference to "scheme or artifice" compels the conclusion that communications fraud is a continuing offense inasmuch as "schemes continue as long as they are in operation." But the State's argument ignores the requirement that a perpetrator commit both elements of communications fraud. The first element speaks in terms of planning the offense and the second in terms of executing it. And the formulation of a scheme to defraud does not extend the crime once the scheme has been executed. While the scheme speaks to the planning or "overall design to defraud," *State v. Bradshaw*, 2006 UT 87, ¶ 12, 152 P.3d 288, it is the overt act of communicating that is the "gist of the offense." *United States v. Blosser*, 440 F.2d 697, 699 (10th Cir. 1971). Without the overt act of communicating, the mere formulation of a scheme cannot be the basis of a communications fraud charge against the perpetrator. In short, if the actual communication falls outside the statute of limitations, the State cannot rely on the presence of a predicate scheme to extend the limitations period.[3]

---

[3] Utah's communications fraud statute borrowed the term "scheme or artifice" from the federal mail fraud statute. *State v. Bradshaw*, 2006 UT 87, ¶ 11, 152 P.3d 288. Federal courts' interpretations of that term are therefore helpful, and the vast majority of federal appellate courts have held that the limitations period for mail fraud begins on the date of mailing, not when the scheme ends. *See,*

(continued...)

¶19 Ample authority recognizes that an ongoing criminal design or scheme is not the same as a continuing offense. Each are specific terms of art, the meaning of which does not depend on "everyday notion[s]" or "ordinary meaning." *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987). A scheme is a predetermined plan comprising "a series of *separate* fraudulent acts" linked by a common design. *Bradshaw*, 2006 UT 87, ¶ 17 (emphasis added). Thus, although a scheme may contemplate multiple criminal acts, each separate crime is separately chargeable. The specific criminal act may be complete, even if the fraudulent scheme is not. And any additional conduct in furtherance of the scheme does not extend the statute of limitations for an already completed offense; rather, the additional conduct constitutes an additional chargeable offense.

¶20 The State acknowledges that a single scheme may result in multiple counts of communications fraud. But it nevertheless asks us to characterize these multiple counts as a continuing crime. This position is inconsistent with the continuing offense doctrine. A continuing offense is one that is "charged and punished as one crime from beginning to end"; it involves an indivisible, unlawful practice. *United States v. Kubick*, 205 F.3d 1117, 1129 (9th Cir. 1999). If communications fraud were a continuing offense, Mr. Kay could be charged with only a single count of the crime after all the fraudulent conduct had ceased. But that is not how the State charged the conduct and that is not what the statutory language dictates. The statutory language defines each fraudulent communication as a separate, complete offense and the State's information charged Mr. Kay with multiple counts of communications fraud.[4]

---

[3](...continued)
*e.g.*, *United States v. Bennett*, 765 F.3d 887, 894 (8th Cir. 2014); *United States v. Siddons*, 660 F.3d 699, 705 (3d Cir. 2011); *United States v. Gray*, 367 F.3d 1263, 1269–70 (11th Cir. 2004); *United State v. Crossley*, 224 F.3d 847, 859 (6th Cir. 2000); *United States v. Kimler*, 167 F.3d 889, 894 n.6 (5th Cir. 1999); *United States v. Barger*, 178 F.3d 844, 847 (7th Cir. 1999); *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir. 1993); *United States v. Eisen*, 974 F.2d 246, 263–64 (2d Cir. 1992); *United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991); *United States v. Blosser*, 440 F.2d 697, 699 (10th Cir. 1971).

[4] Although the State charged Mr. Kay with multiple counts of communications fraud, it sought to cast the separate charges as continuing offenses by alleging that the fraudulent communications
(continued...)

¶21 The State further argues that by continuing construction of the Fowleses' home and making false excuses for not meeting to close on the home, Mr. Kay concealed his fraud. According to the State, these acts of concealment extended the statute of limitations. But whether the crime is continuing depends not on the specifics of Mr. Kay's conduct, but on the elements of the statutory offense. So, even if building the home or avoiding contact with the Fowleses were part of the scheme, that would not extend the limitations period.

¶22 The State expresses concern over situations where the concealment of a fraudulent scheme prevents victims from becoming aware that they have been harmed. But the Legislature has addressed this concern in another statute. The State may bring charges for concealed fraud crimes "within one year after a report of the offense has been filed." UTAH CODE § 76-1-303(1). This statute ameliorates concerns about fraudsters concealing their crimes and lulling their victims into a sense of security until the statute of limitations has run. In this case, however, the State cannot claim the benefit of this statute because the Fowleses reported Mr. Kay to the Perry Police Department in July 2008, but the State did not file charges until June 2011.

¶23 We conclude that communications fraud is complete when a fraudulent communication is made. Accordingly, communications fraud is not a continuing offense. The district court correctly dismissed the charges against Mr. Kay on the grounds that they were barred by the statute of limitations. Mr. Kay allegedly committed the four counts of communications fraud between June and November 2006, but the State did not commence prosecution until July 2011, almost a year after the expiration of the four-year limitations period. And because the pattern of unlawful activity charge was predicated on the four charges of communications fraud, the district court correctly dismissed all of the charges in *Kay I*.

---

[4](...continued)
commenced "on or about June 6, 2006 and continu[ed] through June 18, 2008." But whether a crime is continuing depends solely on the statutory language, not "the conduct charged by the prosecutor [or] the language of the [information] in a particular case." *United States v. Yashar*, 166 F.3d 873, 877 (7th Cir. 1999).

## II. THE STATE HAS FAILED TO INDEPENDENTLY CHALLENGE THE DISTRICT COURT'S DISMISSAL OF *KAY II*

¶24 Two days after the district court dismissed *Kay I*, the State refiled charges in *Kay II*. In the *Kay II* information, the State charged Mr. Kay with five counts of communications fraud on the basis of the e-mails he sent between March and June 2008. It also charged Mr. Kay with one count of a pattern of unlawful activity on the basis of the communications fraud charges. Mr. Kay again moved to dismiss the charges as barred by the statute of limitations. The State opposed dismissal on the grounds that Mr. Kay's e-mails were designed to "lull" the Fowleses into thinking the parties could resolve the dispute, and that he therefore could not rely on the statute of limitations as a defense.

¶25 The district court dismissed the new charges against Mr. Kay, concluding that the evidence presented in *Kay II* was the same evidence presented in *Kay I* and that *Kay II* was merely "an attempt by the State to prosecute [Mr. Kay] for the same substantive offenses as in the previous case." *See* UTAH R. CRIM. P. 25(d) ("An order of dismissal . . . based upon the statute of limitations[] shall be a bar to any other prosecution for the offense charged.").

¶26 On appeal, the State's opening brief addressed the sole issue of whether communications fraud is a continuing offense under Utah law.[5] The State made no effort to independently challenge the district court's dismissal of *Kay II*. Instead, it argued only that "should this Court agree with the State that the charges in this case are continuing offenses, then [Mr. Kay's arguments] will not apply because . . . [*Kay I*] would be reinstated, and there would be no need for [*Kay II*]." And the State did not respond to Mr. Kay's argument that the order of dismissal in *Kay I* on the basis of the

---

[5] We do not foreclose the possibility that an e-mail sent for the purpose of executing or concealing a fraudulent scheme could give rise to a separate charge of communications fraud for which the statute of limitations would begin to run on the date of the mailing. In this case, however, the State failed to argue on appeal that the e-mails constituted an independent basis for separate charges of communications fraud. Rather, the State argued only that the e-mails continued the crimes charged in *Kay I*. Indeed, the State admitted at oral argument that a reversal in *Kay II* was entirely dependent upon a reversal in *Kay I*.

statute of limitations barred any subsequent prosecution of the same offense.

¶27  In short, the State has failed to separately challenge the district court's dismissal of *Kay II*.  Its arguments with regard to *Kay II* are entirely dependent upon our disposition of *Kay I*.  Because we conclude that communications fraud is not a continuing offense and affirm the dismissal of *Kay I*, we also affirm the district court's dismissal of *Kay II.*

## CONCLUSION

¶28  Communications fraud is not a continuing offense.  UTAH CODE § 76-10-1801.  The statute of limitations begins running when the fraudulent communication is made.  In *Kay I*, the statute of limitations had run for the charged crimes.  In *Kay II*, the State failed to challenge the district court's dismissal, instead relying on the same argument it made in *Kay I*.  We therefore affirm the dismissal of both cases.

———————