# Illinois Official Reports

## Appellate Court

*People v. Casas*, 2016 IL App (2d) 150456

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. FERNANDO CASAS, JR., Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-15-0456 |
| Filed | April 14, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 14-CF-2204; the Hon. Liam C. Brennan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Eldad Z. Malamuth, Assistant Attorneys General, of counsel), for the People.<br><br>Mark H. Kusatzky, of Northfield, for appellee. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Hudson and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1        The question presented in this case is whether the offense of violation of bail bond is a continuing offense such that the limitations period on a violation-of-bail-bond prosecution is tolled until an offender is returned to custody. We hold that it is.

¶ 2        At some point in 1996 (the record does not indicate precisely when), defendant, Fernando Casas, Jr., was indicted by the statewide grand jury for the manufacture or delivery of cocaine in excess of 900 grams, a Class X felony. The case was transferred to Du Page County under case number 96-CF-1920. On October 16, 1996, the circuit court admitted defendant to bail in the amount of $750,000; he posted a 10% cash bond of $75,000. Thereafter, defendant regularly appeared in court for the case. On June 9, 1998, however, defendant failed to appear in court, and his bond was forfeited. During the next 30 days, defendant did not surrender himself to authorities, and a bench warrant was issued for his arrest. Later, defendant was tried *in absentia*, found guilty, and sentenced to 20 years' imprisonment.

¶ 3        On April 5, 2014, roughly 18 years after defendant was first indicted, the police stopped defendant for a traffic offense in Du Page County. During that stop, defendant gave the police a false name and a fake ID. In subsequent conversations with the police, defendant revealed his true identity, admitted that he stopped going to court in the 1996 case, and acknowledged the warrant for his arrest. Defendant also confessed that because of the arrest warrant he had used two different false identities, including the one on the fake ID he purchased in Mexico to avoid apprehension while living in the United States.

¶ 4        Based on these facts, in December 2014, defendant was indicted for the violation of his 1996 bail bond. The Criminal Code of 2012 sets forth the offense of violation of bail bond as follows:

> "Whoever, having been admitted to bail for appearance before any court of this State, incurs a forfeiture of the bail and knowingly fails to surrender himself or herself within 30 days following the date of the forfeiture, commits, if the bail was given in connection with a charge of [a] felony ***, a felony of the next lower Class ***." 720 ILCS 5/32-10(a) (West 2014).

The State's indictment alleged that defendant forfeited his bond by failing to appear in court on June 9, 1998, and by knowingly failing to surrender himself within 30 days of that date. The offense was charged as a Class 1 felony because defendant's underlying cocaine charge was a Class X felony.

¶ 5        Defendant moved to dismiss the indictment, arguing that a prosecution for violation of his bail bond was time-barred. 725 ILCS 5/114-1(a)(2) (West 2014). More specifically, defendant claimed that, under the general statute of limitations for felonies, the State had three years to bring the bail-bond charge against him (720 ILCS 5/3-5(b) (West 2014)) or until July 10, 2001. Defendant noted that more than three years had passed and asserted that the State did not allege any facts in the charging instrument that would toll or extend the three-year limitations period. See generally 720 ILCS 5/3-6 (West 2014) (extending limitations period for certain offenses); 720 ILCS 5/3-7 (West 2014) (excluding certain times from limitations period); 720 ILCS 5/3-8 (West 2014) (providing that for continuing offenses, limitations period is tolled and commences when "last such act" was committed).

¶ 6    In response, the State filed a superseding information, which provided as follows:

"[O]n or about July 9, 1998, and continuing through and until April 5, 2014, [defendant] committed the offense of VIOLATION OF BAIL BOND, a Class 1 felony, in that *** defendant, after being admitted to bail on or about October 16, 1996, for appearance in the Circuit Court of DuPage County *** in case 96 CF 1920, and on or about June 9, 1998, he incurred a forfeiture of his bail and thereafter knowingly, willfully, and unlawfully failed to surrender himself within 30 days following the date of the forfeiture of the bail, in violation of [section 32-10(a) of the Criminal Code (720 ILCS 5/32-10(a) (West 2014))]; and because Violation of Bail Bond should be considered a continuing offense, the statute of limitations did not start running until April 5, 2014, when defendant was apprehended and admitted that he used a false identity to evade prosecution."

In a footnote in the information, the State asserted that "[t]his Court is bound by *People v. Grogan*, 197 Ill. App. 3d 18 (1st Dist. 1990), which held that violation of a bail bond is *not* a continuing offense." (Emphasis in original.) The State then noted that it, with the superseding information, was "mak[ing] a good[-]faith argument that *Grogan* was improperly decided and should be overruled."

¶ 7    The State's use of the phrase "continuing offense" was a reference to section 3-8 of the Criminal Code, which tolls the three-year limitations period as follows: "When an offense is based on a series of acts performed at different times, the period of limitation prescribed by this Article starts at the time when the last such act is committed." 720 ILCS 5/3-8 (West 2014).

¶ 8    The trial court granted defendant's motion to dismiss, finding that pursuant to *Grogan* defendant's prosecution for violation of a bail bond was time-barred. The State timely appealed.

¶ 9    On appeal, the State primarily contends that violation of bail bond is a continuing offense under section 3-8 of the Criminal Code (*id.*) and that *Grogan* was wrongly decided. Thus, according to the State, the limitations period was tolled when the offense was initially committed and began to run once defendant was taken into custody. Accordingly, since defendant was charged with the bail-bond offense well within three years from the date of his arrest, the statute of limitations was not violated. In the alternative, the State argues that its reference to defendant's use of a false identification qualifies as an exception to the limitations period for when a criminal defendant "is not usually and publicly resident within this State" (720 ILCS 5/3-7(a) (West 2014)). Because we agree with the State on the first issue, we need not address the second.

¶ 10    Whether violation of bail bond is a continuing offense and whether the superseding information was properly dismissed present questions of law, which we review *de novo*. *People v. Macon*, 396 Ill. App. 3d 451, 454 (2009). As noted, most felony offenses must be charged "within 3 years after the commission of the offense." 720 ILCS 5/3-5 (West 2014). A crime is "committed" and the limitations period begins to run when the final element of the offense is completed. See generally *People v. Blitstein*, 192 Ill. App. 3d 281, 284 (1989) (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)); *People v. Mudd*, 154 Ill. App. 3d 808, 815 (1987). But, as the Utah Supreme Court has helpfully observed, "[i]n the case of a continuing offense, while criminal liability attaches when every element is satisfied, the statute of limitations does not begin to run until the perpetrator ceases to satisfy the elements

of the crime. At that point, the whole arc of criminal conduct is aggregated into a single criminal violation." *State v. Taylor*, 2015 UT 42, ¶ 12, 349 P.3d 696.

¶ 11    As noted above, in Illinois, the continuing-offense exception is codified in section 3-8 of the Criminal Code (720 ILCS 5/3-8 (West 2014)). Illinois law holds that the continuing-offense exception to the statute of limitations applies in certain instances, such as where the crime is conspiracy (*People v. Konkowski*, 378 Ill. 616, 621 (1941)), embezzlement (*People v. Adams*, 106 Ill. App. 2d 396, 405 (1969)), criminal contempt (*People v. Levinson*, 75 Ill. App. 3d 429, 436 (1979)), failure to maintain records concerning controlled substances (*People v. Griffiths*, 67 Ill. App. 3d 16, 20 (1978)), or escape from custody (*People v. Miller*, 157 Ill. App. 3d 43, 46 (1987)). Since escape and violation of bail bond are similar offenses, we will begin by discussing *Miller*.

¶ 12    In *Miller*, the defendant was convicted of escape and appealed on the basis that she had been charged with that offense after the limitations period had expired. *Id.* at 44-45. The First District Appellate Court (relying principally on the United States Supreme Court's decision in *United States v. Bailey*, 444 U.S. 394 (1980) (construing federal escape statute)), held that escape was a continuing offense under Illinois law. *Miller*, 157 Ill. App. 3d at 46. Specifically, the *Miller* court determined that "escape encompasses not only the defendant's initial departure but [also] his failure to return to custody." *Id*. The court noted that an escaped prisoner "poses a continuing threat to society" and that the consequences of viewing escape as "an isolated occurrence *** would encourage a convicted felon to remain in hiding until the three-year statute of limitations had expired." *Id*. Accordingly, the court found that "once the defendant had escaped, she was under a duty to terminate her status as a fugitive by turning herself over to the authorities." *Id*. Thus, "[t]he three-year statute of limitations applicable to felonies [citation] is tolled during the period an escapee remains at large." *Id.*; see also *Bailey*, 444 U.S. at 413 ("we think it clear beyond peradventure that escape from *** custody *** is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure").

¶ 13    Parenthetically, we note that we recently relied on *Miller* when holding that, because escape is a continuing offense, a defendant who was 16 when he escaped, but who was 17 when he was captured and arrested, could be prosecuted in criminal court rather than juvenile court. *People v. Esparza*, 2014 IL App (2d) 130149, ¶¶ 14-15.

¶ 14    Now we turn to *Grogan*, which addressed whether violation of a bail bond is a continuing offense. There, the defendant was charged with theft and posted bond in July 1981. *Grogan*, 197 Ill. App. 3d at 19. When he failed to appear in court in December 1981, his bond was forfeited and an arrest warrant was issued; then, when he failed to surrender within 30 days, judgment was entered on the bond forfeiture. *Id.* at 19-20. In 1987, the defendant was indicted for violation of his bail bond. *Id.* at 19. He was convicted of that offense and appealed. *Id*. at 21.

¶ 15    On appeal, the defendant argued that his trial counsel was ineffective for failing to argue that his prosecution on the bail-bond charge was barred by the three-year statute of limitations. *Id.* The State, relying on *Miller*, asserted that the offense of violation of bail bond was similar to the offense of escape. *Id*. The *Grogan* court framed the State as arguing the following: "because the purpose of the violation of bail bond statute is to impose a duty on defendant to appear in court, each day that defendant fails to surrender must be thought of as a breach of that duty and that this breach continues until defendant appears in court." *Id*.

However, the *Grogan* court distinguished *Miller*, asserting that "[t]he offense of violation of bail bond, unlike the offense of escape of a convicted felon, is [(1)] not the kind of offense that poses a continuing threat to society, nor can it [(2)] be defined as a series of related acts constituting a single [course] of conduct, such as conspiracy or embezzlement." *Id.* at 21-22.

¶ 16    We determine that the court in *Grogan* was wrong on both points. First, we cannot say that a defendant who violates his or her bail bond categorically does not pose a continuing threat to the public. In fact, it is precisely because of "the threat posed by persons who commit crimes while on bond" (*People v. Dowthard*, 197 Ill. App. 3d 668, 671 (1990)) that the legislature implemented mandatory consecutive sentencing for any felony committed while a defendant is on bond. See Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-8-4(h) (now 730 ILCS 5/5-8-4(d)(9) (West 2014)). To be sure, a defendant's release on bail does reflect the trial court's initial impression that the defendant does "not pose a danger to any person or [to] the community" (725 ILCS 5/110-2 (West 2014) (listing conditions of bond)); however, it also reflects the court's assessment that the defendant will "comply with all conditions of bond" (*id.*). Once the defendant refutes this latter prediction, we see absolutely no reason why he should remain presumptively clothed in the former.

¶ 17    Second, and more importantly, the *Grogan* court was incorrect because the offense of violation of bail bond, like the offense of escape, *is* "a single [course] of conduct" (*Grogan*, 197 Ill. App. 3d at 21), and that course of conduct continues *beyond* the initial commission of the offense. Thus, the *Grogan* court seemingly misapprehended the nature of the offense of violation of bail bond, which is in fact the controlling question: whether the nature of the crime is such that the legislature intended it to be treated as a continuing offense. See *Esparza*, 2014 IL App (2d) 130149, ¶ 13 (quoting *Miller*, 157 Ill. App. 3d at 46, quoting *Bailey*, 444 U.S. at 413, quoting *Toussie*, 397 U.S. at 115).

¶ 18    We determine that the legislature intended that, like escape, violation of bail bond would be treated as a continuing offense. The nature of the offense is that the offender has secured bail and fled. Like escape, wherever else the bail-bond offender is, he is not where he is lawfully supposed to be; he has breached his lawful custody and obstructed justice. Such acts "pose[ ] a threat to the integrity and authority of the court." *United States v. Gray*, 876 F.2d 1411, 1419 (9th Cir. 1989) (holding that "failure of a defendant to appear for sentencing" is a continuing offense). And the threat to the court's authority posed by an on-bond fugitive defendant is just as acute 31 days after his failure to appear as it is, as this case shows, nearly 20 years after he has decided to become a fugitive. In addition, we note that, like escape, there is no separate crime in Illinois for not turning oneself in *after* the violation of his bail bond, so as to distinguish between an initial and a continuing violation. *Cf. United States v. Vowiell*, 869 F.2d 1264, 1269 (9th Cir. 1989). All of this convinces us that the General Assembly intended violation of bail bond to be treated as a continuing offense, because the offense aggregates the entirety of the defendant's criminal conduct.

¶ 19    We note that we have also considered the consequences of interpreting these statutes–sections 3-8 and 32-10(a) of the Criminal Code–one way or another. See *People v. Gutman*, 2011 IL 110338, ¶ 12. While all limitations statutes inure to a defendant's benefit to some degree, to hold in defendant's favor in this case and allow *Grogan* to stand unchallenged would, in our view, constitute an unwarranted windfall. Such a holding would, as the court noted in *Miller*, encourage a defendant "to remain in hiding until the three-year statute of limitations had expired." *Miller*, 157 Ill. App. 3d at 46. Indeed, under that holding,

a defendant could thwart not only a prosecution for violating the bail bond, but also the *underlying* prosecution, which might well have gone cold with evidence that has been "distorted or diluted by the passage of time." *People v. Macon*, 396 Ill. App. 3d 451, 456 (2009). We are singularly disinclined to hamstring both the State and the courts from punishing defendants to the full extent of their crimes.

¶ 20    In addition, our interpretation best enables the State to justly exercise its prosecutorial discretion and to treat each violation-of-bail-bond case on its own merits. To hold otherwise would force the State "to decide whether to pursue prosecution of the [bail-bond offender] before his return to [the court's jurisdiction] and before all the facts surrounding the [bail-bond violation] are known." *State v. Burns*, 564 A.2d 593, 596 (Vt. 1989) (holding that escape is a continuing offense). Accordingly, consistent with the principles of statutory construction (see, *e.g.*, *People v. Williams*, 2016 IL 118375, ¶ 15), viewing the crime of violation of bail bond as a continuing offense strikes us as effectuating the legislature's intent and, furthermore, fosters a just result.

¶ 21    Citing *Toussie*, 397 U.S. 112, defendant contends that violation of a bail bond should not be considered a continuing offense. In *Toussie*, the defendant was required to register for the draft when he turned 18 or within 5 days thereafter. *Id.* at 113. The defendant failed to do so, and eight years later the defendant was indicted for failing to register. *Id.* The defendant moved to dismiss the indictment, claiming that the five-year limitations period had run. *Id.* at 113-14. The government, although agreeing that the crime was complete within 5 days after the defendant turned 18, nevertheless argued that failing to register was a continuing offense that was committed each day the defendant failed to register. See *id.* at 114. The United States Supreme Court disagreed. In doing so, the Court relied on the history of the draft laws, which viewed the duty to register as a "single, instantaneous act to be performed at a given time," and the principle that continuing offenses should not be too readily found. *Id.* at 116-17.

¶ 22    Here, unlike in *Toussie*, the history behind posting bail lends support to the conclusion that violation of a bail bond is a continuing offense. Throughout history, the primary reason why defendants were required to post bail was to ensure that they would appear in court whenever ordered to do so. See, *e.g.*, *United States v. Ryder*, 110 U.S. 729, 736 (1884) ("the object of bail in criminal cases is to secure the appearance of the principal before the court for the purposes of public justice"); see also Timothy R. Schnacke et al., Pretrial Justice Institute, The History of Bail and Pretrial Release (Sept. 24, 2010). That obligation, unlike the obligation that arises with the draft laws, is not comprised of a "single, instantaneous act to be performed at a given time." *Toussie*, 397 U.S. at 116-17. Rather, as a condition of bail, a defendant must "[a]ppear to answer the charge [on which bail was posted] in the court having jurisdiction on a day certain *and thereafter* as ordered by the court *until discharged or final order of the court*." (Emphases added.) 725 ILCS 5/110-10(a)(1) (West 2014). For this reason, defendant here, unlike the defendant in *Toussie*, could not reasonably expect that his crime of violation of a bail bond was complete 30 days after he failed to appear in court on the scheduled court date.

¶ 23    We note that courts in both Texas and New York maintain that their respective equivalent bail-bond offenses are not continuing (*State v. Ojiaku*, 424 S.W.3d 633, 639 (Tex. App. 2013); *People v. Landy*, 510 N.Y.S.2d 190, 191 (N.Y. App. Div. 1986)), although New York courts have not always held this view. See *People v. Ingram*, 345 N.Y.S.2d 441, 446 (N.Y.

Crim. Ct. 1973) (finding that bond-jumping defendant "divested himself of the protection of the statute of limitations by his chosen course of unavailability"). However, we believe that the better approach is the one taken by those jurisdictions that view this as a continuing offense (*e.g.*, *Gray*, 876 F.2d 1411; *State v. Francois*, 577 N.W.2d 417 (Iowa 1998)), and particularly by the Nevada Supreme Court, which stated the following:

"Bail is a privileged release from custody. To allow [the defendant] to avoid prosecution for [the bail-bond violation] simply because he eluded arrest long enough to surpass the three year statute of limitations is contrary to the purpose of [the violation-of-bail-bond statute] in particular and bail in general. Therefore, based on the fact that [the statute] is intended to punish those on bail who violate the conditions of their bail by failing to appear before the court when commanded, we conclude that [violation of a bail bond] is a continuing offense ***." *Woolsey v. State*, 906 P.2d 723, 726 (Nev. 1995).

We agree and so hold. We cannot, as the State has asked, "overrule" *Grogan*, since it is a decision of a court of equal stature; however, that does not prevent us from expressing our view that the decision in *Grogan* should no longer be followed. *People v. Thomas*, 2014 IL App (2d) 121203, ¶ 48.

¶ 24 Though it is not entirely clear from his appellate brief, defendant also appears to argue that the State's superseding information was "fatally defective" in that it referred to violation of bail bond as a "continuing offense" without specifically citing section 3-8 of the Criminal Code. To the extent that this is defendant's argument, we reject it. Our supreme court has declined to rigidly define what is required for the State to invoke an exception to the statute of limitations. See *People v. Morris*, 135 Ill. 2d 540, 547 (1990). The standard for assessing the sufficiency of a charging instrument–both for the offense and for exceptions to the statute of limitations–is whether the document "provide[s] notice to the defendant of precisely what the State will attempt to prove (and therefore to allow the defendant an opportunity to prepare a defense)." *Id*. Here, the superseding information provided that "on or about July 9, 1998, and *continuing through and until* April 5, 2014, [defendant] committed the offense of VIOLATION OF BAIL BOND." The information then indicated that "because Violation of Bail Bond should be considered a continuing offense, the statute of limitations *did not start running until April 5, 2014, when defendant was apprehended*." (Emphasis added.) Despite the lack of a reference to section 3-8 of the Criminal Code, we determine that the superseding information sufficiently set forth the circumstances under which the State sought to invoke the continuing-offense exception to the three-year statute of limitations. Accordingly, the superseding information was not fatally defective.

¶ 25 For the above-stated reasons, we hold that the State's superseding information should not have been dismissed, that violation of bail bond is a continuing offense, and that *Grogan* should no longer be followed. We therefore reverse the judgment of the circuit court of Du Page County and remand this cause for further proceedings.

¶ 26 Reversed and remanded.